**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4226

LANCELOT WARD,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4247

BERNARD GIBSON, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4248

KEVIN COX,
Defendant-Appellant.

Appeals from the United States District Court

for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-94-454-PJM)

Argued: December 4, 1998

Decided: March 22, 1999

Before HAMILTON and LUTTIG, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Michael wrote the opin-
ion, in which Judge Hamilton and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Fred Warren Bennett, Greenbelt, Maryland, for Appellant
Ward; Deborah Naomi Abramson, Baltimore, Maryland, for Appel-
lant Gibson; Joseph Edmond Beshouri, Washington, D.C., for Appel-
lant Cox. Sandra Wilkinson, Assistant United States Attorney,
Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia,
United States Attorney, Stuart A. Berman, Assistant United States
Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

MICHAEL, Senior District Judge:

I.

On October 4, 1996 a jury found Lancelot Ward, Bernard Gibson,
and Kevin Cox guilty of conspiring to distribute and to possess with
an intent to distribute heroin and cocaine, in violation of 21 U.S.C.
§§ 841(a)(1) and 846. Ward, Gibson, and Cox were indicted follow-
ing a lengthy investigation by the FBI into a drug distribution enter-
prise headed by appellant Gibson's father. The appellants in this case
raise a litany of issues which we address in turn. Because we find no
error in the proceedings below, we affirm.

II.

We turn first to Ward's assertion that the district court erred in sen-
tencing him as a career offender. As a threshold issue, Ward argues

that the district court lacked authority to correct the sentence it first imposed on Ward. At Mr. Ward's first sentencing hearing the court declined to find that Ward was a career offender pursuant to § 4B1.2 of the United States Sentencing Guidelines ("U.S.S.G."). At this first hearing, the court ruled that Ward's plea of guilty to conspiracy to commit robbery in Virginia Circuit Court could not serve as a predicate offense. The court found that the conviction was not a "crime of violence" because Virginia's conspiracy statute does not have as one of its elements proof of a violent crime. The government, arguing that the court's determination was wrong as a matter of law, filed a timely motion pursuant to Fed.R.Crim.P 35(c) to correct the sentence. After considering the government's motion, the court indicated that at the time of the first sentence it had not been aware of this court's decision in United States v. Cook, 26 F.3d 507 (4th Cir.), cert. denied, 513 U.S. 953 (1994). We held in Cook that under narrow circumstances, a sentencing court may look beyond the elements of the predicate offense to charging papers and jury instructions to determine whether the offense is a "violent felony." 26 F.3d at 508-509.

Rule 35(c) of the Federal Rules of Criminal Procedure provides for correction of a sentence by the sentencing court:"The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." A district court's authority to correct a sentence imposed as a result of "clear error" is limited to "cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a)." United States v. Waters, 84 F.3d 86 (2d Cir. 1996) (quoting United States v. Abreu-Cabrera, 64 F.3d 67, 72 (2d Cir. 1995)). Because the district court's first imposition of sentence was based on a misperception of the governing law in this Circuit, we find that the district court was authorized to correct the sentence previously given.

In resentencing Ward, the district court ruled that Ward's conviction for conspiracy to commit robbery was a "crime of violence." This conspiracy conviction coupled with the appellant's 1982 conviction for armed bank robbery brought the career offender guideline into play. To merit a sentence as a career offender, a defendant must be (1) at least eighteen years old at the time of the offense, (2) guilty,

3

presently, of a "felony that is either a crime of violence or a controlled substance offense," and (3) guilty, historically, of "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Ward takes issue only with the sentencing court's determination that his conspiracy conviction was a "crime of violence".

The guidelines define "a crime of violence" as a felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). The application notes indicate that a "`crime of violence' includes ... robbery." U.S. SENTENCING GUIDELINES MANUAL § 4B1.2 application note 1. The appellant argues that the district court impermissibly found that the conspiracy conviction was a crime of violence because to make this determination, the court had to look beyond the elements of Virginia's conspiracy statute.[1] Ward pled guilty to § 18.2-22 of the Code of Virginia which provides:

> If any person shall conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth, or if he shall so conspire, confederate or combine with another within this Commonwealth to commit a felony either within or without this Commonwealth, he shall be guilty of a felony....

No explicit element of this statutory provision includes the use, attempted use, or threatened use of physical force against the person of another. In ruling that appellant's conspiracy conviction was a crime of violence, the district court looked to the object of the conspiracy, robbery. The object of the conspiracy was distilled from the indictment which charged that Ward "did conspire, confederate, and

_____

[1] Ward does not argue that a robbery conviction does not constitute a crime of violence.

4

combine with another person to commit a felony in this State, to-wit: Robbery."

To determine whether a prior felony conviction meets the Sentencing Guideline's definition of a crime of violence, a court must determine whether the elements of the prior offense involved conduct that presented a serious risk of physical injury to another. United States v. Kirksey, 138 F.3d 120, 124 (4th Cir.), cert. denied, 513 U.S. 953 (1994). This determination must be made using a categorical approach. Taylor v. United States, 495 U.S. 575, 600, 602 (1990). The categorical approach generally limits the court's inquiry to the fact of conviction and the statutory elements of the prior offense. Id. This prevents district courts from having to conduct complex mini-trials in an attempt to unearth relevant facts.

This court has unambiguously acknowledged that in keeping with the categorical approach, a sentencing court may look beyond the elements of the charged offense in a limited class of cases to determine whether that offense is a "crime of violence." United States v. Coleman, 158 F.3d 199 (4th Cir. 1998); United States v. Kirksey, 138 F.3d 120 (4th Cir.), cert. denied, 119 S.Ct. 122 (1998); United States v. Cook, 26 F.3d 507 (4th Cir.), cert. denied, 513 U.S. 953 (1994). Though this court has not had occasion to decide whether a sentencing court may look to the object of a conspiracy to determine if the conspiracy is a crime of violence, our decision in Kirksey is instructive. In Kirksey the court addressed the question of whether convictions in Maryland state courts for common law assault and battery qualify as predicate crimes of violence. 138 F.3d at 120. Because Maryland recognizes common law crimes, no statute defines their elements and it is not possible to determine whether an assault and battery conviction is a crime of violence by referring solely to the elements of the offense.[2] Id . We reasoned that the categorical approach mandated by Taylor is accommodated where the defendant's violent conduct was revealed by consulting the charging docu-

_____

[2] Common law assault and battery permit a defendant to be convicted for behavior that does not necessarily constitute a "crime of violence." For example, one could be convicted of assault and battery in Maryland for offensively touching the person of another.

5

ments. This common sense approach also applies to a conspiracy conviction.

As with the crimes addressed by this court in Coleman, Kirksey, and Cook, the Virginia conspiracy statute does not fully define the criminal act. Before one may be convicted of a conspiracy charge, it must always be asked: "conspiracy to do what?" United States v. Fiore, 983 F.2d 1, 3 (1st Cir. 1992), cert. denied, 507 U.S. 1024 (1993). Though Virginia's conspiracy statute does not explicitly include as an element "the use, attempted use, or threatened use of physical force against the person of another," that element logically must be proven to support a conviction for conspiracy to commit a violent felony. United States v. Preston, 910 F.2d 81, 86 (3d Cir. 1990), cert. denied, 498 U.S. 1103 (1991). Simply because some conspiracy convictions will not be predicate offenses, Taylor's categorical approach does not require a finding that all conspiracy convictions are exempt from serving as predicate offenses. Such a rule would ignore the policy underlying Taylor's categorical approach as one meant "to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." Taylor, 495 U.S. at 590; see also United States v. Fiore, 983 F.2d 1 (1st Cir. 1992). To give full effect to this policy, it is critical to determine the object of the conspiracy.

We hold, therefore, that a sentencing court can go beyond the general elements of a criminal conspiracy statute to determine whether a violent felony was the object of the conspiracy. When presented with a prior conviction for conspiracy, a sentencing court can determine the object of the conspiracy from the record of conviction, the charging document, and the jury instructions. Together with the 1982 conviction for armed bank robbery, Ward's conviction of conspiracy to commit robbery provides the district court with a proper basis to sentence Ward as a career offender.

III.

Ward also contends that the district court erred in denying his motion to suppress evidence seized pursuant to a search warrant and erred in attributing 472 grams of heroin to him for sentencing purposes. We affirm the district court on both issues.

6

A.

Ward contends that federal agents violated the knock and announce rule by waiting 60 seconds and then forcibly entering his home. Absent clear error, this court will not disturb a district court's factual findings when made on a motion to suppress. United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). We review de novo the ultimate suppression decision. Id. On the morning of December 7, 1994, law enforcement agents arrived at Ward's home and executed a search warrant based on probable cause that documentary evidence relating to Ward's involvement in the drug conspiracy under investigation would be found. Agent Louis Luciano, the agent who made entry, testified at the suppression hearing that he knocked on the door with his foot at intervals of 10 to 15 seconds while yelling "FBI search warrant" after each knock. Agent Luciano stated that he waited 60 seconds before entering forcibly. The district court also heard from agent Lisa Nielsen who corroborated Luciano's account.

The knock and announce requirement is found in 18 U.S.C. § 3109. Under § 3109, a law enforcement officer may forcibly enter a house in order to execute a search warrant only "if, after notice of his authority and purpose, he is refused admittance." Based on the testimony of agents Luciano and Nielsen, the district court found that the 60 second waiting period was reasonable and there is nothing in the record to indicate that this determination was clearly erroneous.

Appellant Ward has a fall back position. Ward contends that the agents waited 60 seconds in compliance with a "policy" whereby agents uniformly knock, announce, and enter after 60 seconds. It is Ward's position that such a "policy" is not in accord with caselaw requiring a case-by-case determination as to whether the length of time agents wait before entering is sufficient to establish that the agents were refused admittance. It is the rule in this circuit that "the time which must elapse after knocking and announcing their identity and purpose ... before breaking and entering varies with the exigencies of each case." United States v. Jackson , 585 F.2d 635 (4th Cir. 1978) (quoting United States v. Phelps, 490 F.2d 644, 647 (9th Cir. 1974), cert. denied, 419 U.S. 836 (1974)). Any purported "policy" that does not account for this rule would be troublesome. To support the existence of a uniform 60 second wait policy, appellant points

only to the testimony of agent Luciano stating "...we were told at around that time that we had to wait 60 seconds, and it was becoming a policy at that point...." There is no other evidence indicating that the FBI had developed such a policy. We, however, need not reach this potentially troubling issue because it is evident from the record that the court below independently examined the circumstances and found the 60 second waiting period reasonable. This judgment is not clearly erroneous.

B.

In imposing Ward's sentence, the district court found that the appellant was responsible for 555 grams of heroin. The court specifically found that Ward personally possessed a total of 155 grams and attributed an additional 400 grams to Ward as reasonably foreseeable. It is this attribution of 400 grams of heroin that Ward now challenges. Section 1B1.3(a)(1) of the U.S.S.G. permits courts to attribute to a defendant the amount of drugs that a co-conspirator manufactured or distributed where such amount is reasonably foreseeable by the defendant. United States v. Moore, 29 F.3d 175, 178 (4th Cir. 1994); United States v. Irvin, 2 F.3d 72, 77-78 (4th Cir. 1993), cert. denied, 510 U.S. 1125 (1994). One of Ward's co-conspirators, Michael Lancaster, testified at trial that he transported from New York at least a half a kilogram of heroin as a part of the drug operation run by appellant Gibson's father, Bernard Gibson, Sr. Ward played an active role in this criminal enterprise. Mr. Lancaster also testified that he and Ward sold heroin together in Washington, D.C. There is no doubt that Mr. Lancaster was a co-conspirator of Ward's and there is likewise no doubt that a conspirator is responsible for the acts of others in furtherance of the conspiracy which acts are known or reasonably foreseeable to him. Based on Lancaster's testimony at trial, the district court found that at least 400 grams of the half a kilogram transported by Lancaster were reasonably foreseeable to Ward. After a review of the trial transcript, we are not able to say that the district court's factual determination is clearly erroneous. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990).

IV.

Appellant Gibson argues that the district court erred in admitting evidence of his purchase of marijuana, admitting a gun found in his

8

apartment at the time of his arrest, in sentencing him as a manager or supervisor, and attributing 8 kilograms of cocaine to him as reasonably foreseeable. Because we find no merit in Gibson's contentions of error, we affirm the district court's rulings.

At trial the government sought the introduction of testimony by a cooperating witness, Lancaster, indicating that Gibson bought marijuana from him. Gibson contends that the court's decision to admit this evidence was error because any probative value is outweighed by undue prejudice. The government sought introduction of this testimony to shed light on the relationship between Gibson and his coconspirator, Lancaster. At trial, the court permitted defense counsel the opportunity to engage in voir dire of Lancaster. Lancaster stated that he sold marijuana to Gibson for personal use during the time frame of the cocaine and heroin conspiracy for which Gibson was on trial. Because of this overlap in time and because the evidence established the nature of the relationship between Gibson and Lancaster, the court admitted the testimony. We review a district court's evidentiary rulings under an abuse of discretion standard. United States v. Grimmond, 137 F.3d 823 (4th Cir. 1998). We cannot find that this decision was an abuse of discretion.

Gibson next asserts that evidence of his gun ownership should not have been admitted. This court has held that the"admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases." United States v. Collazo, 732 F.2d 1200 (4th Cir. 1984). Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia. United States v. Ricks, 882 F.2d 885 (4th Cir. 1989); United States v. Soto, 959 F.2d 1181, 1187 (2d Cir. 1992). When government agents entered Gibson's apartment, a Rolex watch, a wad of $1,055, and a hand gun were located. These items are all indicia of drug dealing and as such the district court's ruling that the probative value of the gun evidence outweighed any undue prejudice is not an abuse of discretion. Gibson, however, argues that there was no evidence at trial linking the hand gun to the drug conspiracy and states that the evidence should have been excluded because without a link, the gun evidence is at best marginally probative. The appellant suggests that the sole basis for the admission of the gun was that gun evidence is per se admissible in drug cases. There is no per se rule in this circuit requiring district

9

courts to admit gun evidence in drug conspiracies. The Federal Rules of Evidence, however, evince a strong preference for the admission of all relevant evidence. Evidence of gun possession and ownership is logically relevant in many drug conspiracies. We leave it to the district courts to determine on a case by case basis whether the potential relevance of the gun evidence is outweighed by unfair prejudice or is barred by any other rule of evidence.

V.

We have reviewed carefully the issues raised by appellant Gibson relating to the district court's imposition of sentence and the issues raised by appellant Cox and find them to be without merit.

For the foregoing reasons, the judgement of the district court is affirmed.

AFFIRMED

10