**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 06-4113**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TRAVIS DEON DIXON, a/k/a Travis Deonn Dixon,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  N. Carlton Tilley, Jr., Chief District Judge.  (1:05-cr-00173-NCT)

_____

Submitted:  February 7, 2007          Decided:  April 13, 2007

_____

Before WILKINS, Chief Judge, and WILKINSON and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Thomas N. Cochran, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, L. Patrick Auld, Assistant United States Attorney, Deputy Chief, Criminal Division, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Travis Deon Dixon appeals his sentence for being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g)(1) (West 2000). Finding no error, we affirm.

I.

On January 6, 2005, Burlington (North Carolina) Police Department officers executed a search warrant at Dixon's residence based on controlled drug purchases previously made from that residence, including from Dixon. One item seized by the officers was a stolen, loaded Ruger .44 caliber magnum revolver, model Redhawk, located under the mattress of the bed in the room Dixon identified as his. During the search, Dixon asked to put on a pair of sweat pants that were on the floor by the bed, the pockets of which were found to contain $3,098 in United States currency. The search of the residence also uncovered electronic scales with white powder residue, a large box of plastic sandwich bags, and a set of walkie talkies. Finally, officers seized a plastic bag containing 5.7 grams of marijuana that was in plain view of Dixon and other persons in the residence.

Dixon was subsequently indicted by a grand jury for the Middle District of North Carolina for being a felon in possession of a firearm. Dixon pleaded guilty to the indictment.

Following a sentencing hearing, the district court employed a base offense level of 24 after determining that Dixon had at least

two prior felony convictions for either a crime of violence or a controlled substance offense. See United States Sentencing Guidelines Manual § 2K2.1(a)(2) (2004). This determination was based on Dixon's North Carolina state court felony convictions in 1994 for possession with the intent to sell and deliver cocaine and in 2000 for speeding to elude arrest. The court applied a two-level enhancement because at least one of the firearms involved in the offense was stolen, see U.S.S.G. § 2K2.1(b)(4), and a four-level enhancement because Dixon possessed a firearm in connection with another felony offense, see id. § 2K2.1(b)(5). With a three-level reduction for acceptance of responsibility, see id. § 3E1.1, Dixon's total offense level was 27, which, when combined with Dixon's Criminal History Category of VI, yielded a guideline range of 130 to 162 months imprisonment. Because the statutory maximum for Dixon's offense was 120 months, see 18 U.S.C.A. § 924(a)(2) (West 2000), that term became Dixon's guideline range, see U.S.S.G. § 5G1.1(a). Finding no reason to deviate from the advisory guideline range, the district court imposed a 120-month sentence.

II.

Dixon maintains that the district court, in the course of determining his guidelines offense level, erred in concluding that he had at least two prior felony convictions for either a crime of violence or a controlled substance offense. He does not challenge the fact that his 1994 conviction for possession with intent to

3

sell and deliver cocaine constituted one predicate offense.  But, he argues that his 2000 conviction for speeding to elude arrest was not for a crime of violence.

"Crime of violence" is defined by the guidelines as

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

(1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a); see id. § 2K2.1, comment. (n.1) (adopting definition of "crime of violence" from U.S.S.G. § 4B1.2).  The offense of speeding to elude arrest does not include "as an element the use, attempted use, or threatened use of physical force against the person of another," so it is a crime of violence only if it "involves conduct that presents a serious potential risk of physical injury to another."[1]  Thus, the question before us is whether the offense at issue satisfies that definition.  This is a question of law that we review de novo.  See United States v. Pierce, 278 F.3d 282, 286 (4th Cir. 2002).

Dixon was convicted of violating N.C. Gen. Stat. § 20-141.5, which provides:

---

[1]Dixon does not dispute that his offense was punishable by imprisonment for a term exceeding one year.

4

(a) It shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties....

(b) If two or more of the following aggravating factors are present at the time the violation occurs, violation of this section shall be a Class H felony.

(1) Speeding in excess of 15 miles per hour over the legal speed limit.

....

(5) Driving when the person's drivers license is revoked.

N.C. Gen. Stat. § 20-141.5 (2005).

Our decision in United States v. James, 337 F.3d 387 (4th Cir. 2003), demonstrates that Dixon's offense was a crime of violence. In James, we held that the South Carolina offense of failure to stop for a blue light, see S.C. Code Ann. § 56-5-750 (2006), constitutes a "violent felony" for purposes of the Armed Career Criminal Act (ACCA),[2] see 18 U.S.C.A. § 924(e) (West 2000 & Supp. 2006), reasoning:

Most cases of failing to stop for a blue light involve the deliberate choice by the driver to disobey the police officer's signal. This disobedience poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the

---

[2]We have recognized the likenesses between the definitions of "crime of violence" under the guidelines and "violent felony" under the ACCA, calling them "almost identical" and holding that "our reasoning regarding the meaning of 'violent felony' is relevant to determining the meaning of 'crime of violence.'" United States v. Johnson, 246 F.3d 330, 333 n.5 (4th Cir. 2001).

    officer, other occupants of the vehicle, and even
    bystanders.

James, 337 F.3d at 391.  In this regard, we found "the potential
for injury in [that] crime analogous to the potential for injury
presented in the crimes of escape and pickpocketing."  Id. at 391
n.4 (citations omitted).

    The very same reasoning requires a conclusion that a violation
of N.C. Gen. Stat. § 20-141.5 "involves conduct that presents a
serious potential risk of physical injury to another."  To violate
§ 20-141.5, a person "must actually intend to operate a motor
vehicle in order to elude law enforcement officers."  State v.
Woodard, 552 S.E.2d 650, 654 (N.C. Ct. App. 2001).  Thus, the very
circumstance that we found present in "[m]ost cases" of violations
of the statute at issue in James is present in all cases of
violations of the statute at issue here.

    Dixon maintains that his conviction was not for a "crime of
violence" because one of the two aggravating factors that made his
offense a felony rather than a misdemeanor--driving with a revoked
license--does not in itself present a serious risk of injury to
another.  The controlling question here, however, is whether a
violation of N.C. Gen. Stat. § 20-141.5 "involves conduct that
presents a serious potential risk of physical injury to another,"

not whether a particular element of that crime--or a factor used in determining the sentence for the crime--involved such conduct.[3]

### III.

In a <u>pro se</u> supplemental brief, Dixon also argues that the district court erred in enhancing his offense level for possessing a firearm in connection with another felony offense, <u>see</u> U.S.S.G. § 2K2.1(b)(5).

This enhancement was well supported by the record. Defense counsel conceded that Dixon had no "legitimate income" at the time of the search, J.A. 21, yet the search revealed that Dixon's sweat pants, located right next to the bed in which the revolver was hidden, contained $3,098. <u>See</u> <u>United States v. Ward</u>, 171 F.3d 188, 195 (4th Cir. 1999) (recognizing that a Rolex watch, a wad of currency totaling $1,055, and a handgun were "all indicia of drug dealing"). The residence contained electronic scales with a white powder residue as well as a large box of sandwich bags and a bag of

---

[3]Dixon also argues that a violation of N.C. Gen. Stat. § 20-141.5 would not constitute a "crime of violence" as that term is defined in 18 U.S.C.A. § 16(b) (West 2000). Dixon's reference to that definition is puzzling, however, because he does not argue that the definition applies here. And, the definition in § 16(b) is critically different than the definition before us in that § 16(b) defines "crime of violence" in part to mean "any ... offense that is a felony and that, by its nature, involves a substantial risk <u>that physical force</u> against the person or property of another <u>may be used</u> in the course of committing the offense." 18 U.S.C.A. § 16(b) (emphasis added). For the reasons we have explained, <u>James</u> governs the application of the definition relevant here.

marijuana.  And, it was information from a confidential informant that he had purchased drugs from Dixon at the residence that had served as the basis for the search warrant.[4]  Taken together, the evidence strongly supported the inference that Dixon's possession of the firearm facilitated his continuing business of selling illegal drugs from his residence, including protecting the proceeds of those sales.

IV.

In sum, finding no error, we affirm Dixon's sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[4]Dixon points out that the Government has not established the quantity or type of drugs that the confidential informant claimed to have purchased from Dixon.  However, in North Carolina, even possession with the intent to distribute marijuana is a felony. See N.C. Gen. Stat. § 90-95 (2005).

8