AGEE, Circuit Judge:
 

 Petitioner Andrew Richard Shaw, a native and citizen of the United Kingdom and a Lawful Permanent Resident, was convicted under New Jersey law of conspiracy in the third degree and was sentenced to two years' probation. Later, after returning from a trip abroad, the Department of Homeland Security ("DHS") determined that Shaw was inadmissible under Section 212(a)(2)(A)(i)(II) (the "Controlled Substance Provision") of the Immigration and Nationality Act (the "INA"), denied him entry into the United States and began removal proceedings. The Controlled Substance Provision states, "[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ... a violation of (or a conspiracy or attempt to violate) any law or regulation of a State ... relating to a controlled substance (as defined in section 802 of Title 21) ... is inadmissible."
 
 8 U.S.C. § 1182
 
 (a)(2)(A)(i)(II). An immigration judge ("IJ") agreed, concluded that Shaw was inadmissible, and ordered him removed under
 
 8 U.S.C. § 1227
 
 (a)(1)(A).
 
 [1]
 
 The Board of Immigration Appeals (the "Board") dismissed Shaw's appeal.
 

 Shaw now petitions this Court for review. We find no error with the Board's decision and deny Shaw's petition for review.
 

 I.
 

 In March 2007, Shaw was charged in New Jersey state court with, among other things, possession of "twenty-five pounds or more" of marijuana with the intent to distribute and conspiracy to commit that crime. A.R. 195. Shaw pleaded guilty to the conspiracy offense and the state court sentenced him to two years' probation. As relevant to Shaw's instant petition, the statute to which he pleaded guilty, N.J. Stat. Ann. § 2C:5-2 (the "Conspiracy Statute"), is a generic conspiracy statute: it forbids any agreement to "engage in conduct which constitutes [a] crime." N.J. Stat. Ann. § 2C:5-2(a).
 
 [2]
 
 In exchange for his plea, the State dismissed the remaining charges in the indictment.
 

 Several years after Shaw's conviction, he briefly left the United States for the United
 Kingdom. In June 2014, Shaw returned to the United States through Raleigh-Durham International Airport, in North Carolina. At the airport, Shaw applied for admission to the United States as a lawful permanent resident. His application was denied.
 

 Following that denial of admission, DHS initiated removal proceedings by serving Shaw with a Notice to Appear. The operative Notice to Appear alleged that Shaw was subject to removal because his conviction under the Conspiracy Statute rendered him inadmissible under the Controlled Substance Provision.
 

 Shaw contested his removability and filed a motion to terminate the removal proceedings, contending that he was not inadmissible under the Controlled Substance Provision. According to Shaw, the Conspiracy Statute did not categorically relate to a controlled substance and, thus, that he was not inadmissible under the Controlled Substance Provision. He also maintained that the Conspiracy Statute was not divisible and, therefore, that the IJ should use the categorical rather than the modified categorical approach adopted in
 
 Descamps v. United States
 
 ,
 
 570 U.S. 254
 
 ,
 
 133 S.Ct. 2276
 
 ,
 
 186 L.Ed.2d 438
 
 (2013). Under the categorical approach, the Board would examine the fact of Shaw's conviction, not its circumstances, to determine whether the Conspiracy Statute as a whole necessarily related to a controlled substance.
 
 See
 

 Omargharib v. Holder
 
 ,
 
 775 F.3d 192
 
 , 196 (4th Cir. 2014). The "modified categorical approach applies only if a state crime consists of multiple, alternative elements creating several different crimes, some of which would" necessarily involve a controlled substance, and others that would not.
 

 Id.
 

 (internal quotation marks omitted).
 

 The IJ rejected Shaw's arguments. At the outset, the IJ determined that neither the categorical nor the modified categorical approach was appropriate, but rather that the Controlled Substance Provision required application of the "circumstance-specific" approach. Under that approach, the IJ may review the "attendant circumstance[s] of the underlying conviction."
 
 Hernandez-Zavala v. Lynch
 
 ,
 
 806 F.3d 259
 
 , 263 (4th Cir. 2015). To determine those attendant circumstances, the IJ consulted the indictment and criminal judgment in Shaw's New Jersey criminal case. Relying on those documents, the IJ concluded that Shaw's Conspiracy Statute conviction was founded on a conspiracy to distribute more than twenty-five pounds of marijuana, a controlled substance. The IJ thus held that Shaw was inadmissible, denied Shaw's motion, and ordered him removed.
 

 Shaw appealed the IJ's order to the Board. There, he principally contended that the IJ "erred in holding that [he] was inadmissible because of a conspiracy conviction." A.R. 47. In other words, Shaw stuck to his previously unsuccessful position and argued that his conviction did not categorically relate to a controlled substance and that the Conspiracy Statute was otherwise indivisible. Shaw also introduced a back-up position: even if the Conspiracy Statute were divisible, the IJ improperly considered the indictment in contravention of
 
 8 C.F.R. § 1003.41
 
 , which, Shaw argued, prohibited the use of indictments (and other non-certified court documents) as evidence in removal proceedings.
 

 The Board dismissed Shaw's appeal. Initially, it rejected the IJ's use of the circumstance-specific approach. Even so, the Board concluded that the IJ's methodology-reviewing the indictment-was permissible because the Conspiracy Statute was divisible. Finally, reviewing the IJ's conclusion, the Board agreed: Shaw's conviction
 under the Conspiracy Statute rendered him inadmissible.
 

 Shaw timely petitioned this Court for review of the Board's adverse decision. We have jurisdiction to consider Shaw's petition for review under
 
 8 U.S.C. § 1252
 
 .
 

 II.
 

 We review the Board's legal determinations de novo, but afford
 
 Chevron
 

 [3]
 
 deference to those determinations when the Board interprets or applies the INA.
 
 Turkson v. Holder
 
 ,
 
 667 F.3d 523
 
 , 527 (4th Cir. 2012). We have limited power to review administrative findings of fact. Such "facts are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."
 
 8 U.S.C. § 1252
 
 (b)(4)(B).
 

 III.
 

 A.
 

 In his petition for review, Shaw revisits his earlier-made arguments. First, he contends that the Board improperly applied the modified categorical approach and should have used the categorical approach. Consequently, Shaw argues that the Board should have looked no further than the face of the Conspiracy Statute. He also asserts that, even if the Conspiracy Statute were divisible, his indictment wasn't proper evidence under the INA. We address each of these arguments in turn.
 

 1.
 

 Shaw first contends that the Board must apply the categorical approach to a generic conspiracy conviction like that at issue here; it cannot consider the conspiracy's object. Accepting Shaw's argument would mean that the Board could not look beyond the fact of his conviction to determine whether it involved a controlled substance. Shaw gives two reasons to support his position: First, such statutes are not divisible because they do not list alternative elements, but rather only one crime: conspiracy. Second, generic conspiracy statutes do not categorically relate to any controlled substance because they touch on any agreement to violate the law. We find Shaw's contention without merit.
 

 Shaw's argument rests on the incorrect assumption that the Board must analyze inchoate crimes-attempt, conspiracy, and solicitation-like any other: by looking only to the elements of the statute criminalizing the inchoate conduct.
 
 [4]
 
 But Board precedent recognizes that inchoate crimes are unique because they "presuppose[ ] a purpose to commit another crime."
 
 See
 

 Matter of Beltran
 
 ,
 
 20 I. & N. Dec. 521
 
 , 526-27 (B.I.A. 1992). That distinction, in turn, makes the underlying criminal purpose-the statute the alien conspired to violate, for example-the focal point of the Board's analysis.
 

 In
 
 Matter of Beltran
 
 , the Board held that if the object of an inchoate offense "would constitute a ground of deportability under [the Controlled Substance Provision]," it would "likewise consider a conviction for solicitation [or attempt or conspiracy] to commit that crime to be a violation of a law 'relating to a controlled substance.' "
 

 Id.
 

 at 527
 
 . More specifically, the Board looked through the aliens' conviction under Arizona's generic criminal solicitation statute and, instead, analyzed
 whether the solicited crime-possession of narcotic drugs-was a ground for inadmissibility under the Controlled Substance Provision.
 
 See
 

 id.
 

 at 525-27
 
 . And, regardless of the term used by the Board, it followed that same procedure here: faced with a generic conspiracy statute, it looked through the statute and performed its categorical analysis on the object of Shaw's conspiracy: possession of a controlled substance with the intent to distribute it.
 

 With Board precedent solidly against his position, Shaw argues that the result compelled by
 
 Matter of Beltran
 
 is contrary to law.
 
 See
 

 8 U.S.C. § 1252
 
 (b)(4)(C) ("[A] decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law."). We disagree.
 

 Indeed, the procedure the Board used in
 
 Beltran
 
 mirrors our own precedent applying the categorical approach to inchoate crimes.
 
 See
 

 United States v. Ward
 
 ,
 
 171 F.3d 188
 
 (4th Cir. 1999). In
 
 Ward
 
 , we held that-when a sentencing court must determine if a defendant's conviction under a generic conspiracy statute is categorically identical to a generic federal crime-it should look beyond the statute and, instead, apply the categorical approach to the conspiracy's object.
 

 Id.
 

 at 192-93
 
 . The defendant in
 
 Ward
 
 had been convicted under Virginia's generic conspiracy statute for a conspiracy to commit the underlying crime of robbery.
 

 Id.
 

 at 192
 
 . We were asked to determine whether that crime qualified as a "crime of violence" under
 
 United States Sentencing Guidelines Manual
 
 § 4B1.2. To answer that question, we looked through the generic conspiracy statute and analyzed the object of the conspiracy: Virginia's robbery offense. The Court explained:
 

 Before one may be convicted of a conspiracy charge, it must always be asked: "conspiracy to do what?" Though Virginia's conspiracy statute does not explicitly include as an element "the use, attempted use, or threatened use of physical force against the person of another," that element logically must be proven to support a conviction for conspiracy to commit a violent felony. Simply because some conspiracy convictions will not be predicate offenses,
 
 Taylor
 
 's categorical approach
 
 [
 

 5
 

 ]
 
 does not require a finding that all conspiracy convictions are exempt from serving as predicate offenses. Such a rule would ignore the policy underlying
 
 Taylor
 
 's categorical approach as one meant "to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." To give full effect to this policy, it is critical to determine the object of the conspiracy.
 

 Id.
 

 at 192-93
 
 (internal citations omitted). The Court then looked to "the record of conviction, the charging document, and the jury instructions" to learn the object of the conspiracy.
 

 Id.
 

 at 193
 
 . Just as the Board's analysis was faithful to its decision in
 
 Matter of Beltran
 
 , so, too, was it faithful to the procedure this Court applied in
 
 Ward
 
 .
 

 This analysis and outcome are consistent with the approach adopted by the other circuit courts of appeals.
 
 See, e.g.
 
 ,
 
 Mizrahi v. Gonzales
 
 ,
 
 492 F.3d 156
 
 (2d Cir. 2007) ;
 
 Peters v. Ashcroft
 
 ,
 
 383 F.3d 302
 
 , 306-07 (5th Cir. 2004) (upholding the Board's application of
 
 Matter of Beltran
 
 to an Arizona solicitation law);
 
 see also
 

 Coronado-Durazo v. INS
 
 ,
 
 123 F.3d 1322
 
 , 1325 (9th Cir. 1997) (declining to apply similar language in
 
 8 U.S.C. § 1251
 
 (a)(2) to a solicitation conviction, but noting that "aliens who have been convicted ... of conspiracy or
 attempt to violate" a controlled substance law are deportable). In
 
 Mizrahi
 
 , for example, the Second Circuit held that it was proper for the Board to consider the indictment and other case-specific documents to determine whether the inchoate offense of criminal solicitation qualified as a conviction relating to a controlled substance.
 
 492 F.3d at 156-57
 
 . The court noted that inchoate offenses, like solicitation or conspiracy, become criminal only if the defendant's conduct is tied to "the criminally proscribed object of another statute": "a defendant is guilty not of generic conspiracy, but of conspiracy to
 
 murder
 
 ; not of generic attempt, but of attempt to
 
 kidnap
 
 ; not of generic solicitation, but of solicitation
 
 to sell drugs
 
 ."
 

 Id.
 

 at 161
 
 . Thus, relying on
 
 Matter of Beltran
 
 , and for reasons nearly identical to those articulated in
 
 Ward
 
 , the
 
 Mizrahi
 
 court concluded that the Board could review the plea agreement to determine whether the alien's conviction for an inchoate offense rendered him inadmissible.
 

 Id.
 

 at 173-75
 
 .
 

 We thus conclude the Board correctly looked through the Conspiracy Statute to review the criminal object of the conspiracy to which Shaw pleaded guilty-possession of more than twenty-five pounds of marijuana with the intent to distribute. Shaw necessarily conspired to do something. Without the power to consult the indictment, the Board would have been unable to learn the object of that conspiracy. To remove that tool from the Board's reach, as Shaw requests, would inhibit its ability to enforce the INA. That conclusion is especially true here, as the Controlled Substance Provision explicitly contemplates the Board applying it to aliens convicted of conspiracy offenses.
 
 8 U.S.C. § 1182
 
 (a)(2)(A)(i)(II).
 

 Assured that the Board applied the proper procedure, we briefly address its conclusion: that Shaw's conspiracy conviction relates to a controlled substance. The administrative record shows that the object of Shaw's conspiracy was the possession of a significant amount of marijuana with the intent to distribute it. Marijuana is a controlled substance, listed in Schedule I of the Controlled Substances Act.
 
 See
 

 21 U.S.C. § 802
 
 (6) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in [any] schedule ... [found in] part B[.]");
 

 id.
 

 § 812 sch. I (listing "marihuana" as a Schedule I controlled substance). Accordingly, any crime involving marijuana-like the one to which Shaw pleaded guilty-is a crime relating to a controlled substance.
 

 In sum, the Board correctly determined that Shaw was convicted of a conspiracy related to the distribution of a controlled substance. That conviction, in turn, rendered Shaw inadmissible under the Controlled Substance Provision and, therefore, subject to removal under § 1227(a)(1)(A).
 

 2.
 

 We next consider whether DHS may use an indictment as evidence of a conviction in a removal proceeding. The INA, specifically 8 U.S.C. § 1229a, provides extensive detail about the conduct of such proceedings. DHS "has the burden of establishing by clear and convincing evidence" that an alien is deportable.
 
 See
 
 8 U.S.C. § 1229a(c)(3)(A). When the alien's criminal history is at issue, § 1229a lists items that "shall constitute proof of a criminal conviction," which include:
 

 • An official record of judgment and conviction.
 

 • An official record of plea, verdict, and sentence.
 

 • A docket entry from court records that indicates the existence of the conviction.
 

 • Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.
 

 • An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.
 

 • Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.
 

 • Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.
 

 Id.
 

 § 1229a(c)(3)(B). A similarly worded regulation indicates that the same documents "shall be admissible as evidence in proving a criminal conviction."
 
 8 C.F.R. § 1003.41
 
 (a). The regulation further makes clear that "[a]ny other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof."
 

 Id.
 

 § 1003.41(d).
 

 According to Shaw, the Board could not rely on his indictment because § 1229a(c)(3)(B) exclusively defines the universe of evidence DHS may use to prove the fact of a conviction. Because an indictment is not listed, Shaw contends that its use by the Board is categorically foreclosed. Shaw further argues that, because the list of evidence included in the INA is exclusive, the associated regulation, which permits reliance on additional evidence, conflicts with the plain language of § 1229a and is therefore invalid. Again, we disagree with Shaw.
 

 We interpret statutes by examining their plain language.
 
 See
 

 Markovski v. Gonzales
 
 ,
 
 486 F.3d 108
 
 , 110 (4th Cir. 2007). Section 1229a(c)(3)(B) provides that the certified court documents listed therein "shall constitute proof of a criminal conviction." The "shall constitute proof" language is clear: if DHS introduces one of those items, the IJ and Board
 
 must
 
 treat such an item as conclusive proof of a conviction. But, the list in § 1229a(c)(3)(B) only sets out what evidence must be treated as conclusive; it contains no language excluding other types of reliable evidence. The statute does not require the IJ or the Board to ignore other persuasive evidence from DHS. To the contrary, the fact a document is not included in § 1229a(c)(3)(B) 's list of records "does not render [it] per se inadmissible."
 
 See
 

 Fraser v. Lynch
 
 ,
 
 795 F.3d 859
 
 , 863-64 (8th Cir. 2015). That's where the regulations governing removal proceedings come into play. When DHS chooses to rely on documents outside of the § 1229a(c)(3)(B) list, the regulation,
 
 8 C.F.R. § 1003.41
 
 (d), provides that DHS may do so-and that the IJ and the Board may consider those documents-so long as such documents "reasonably indicate[ ] the existence of a criminal conviction."
 
 8 C.F.R. § 1003.41
 
 (d). Here, the indictment was proper evidence under
 
 8 C.F.R. § 1003.41
 
 (d). Significantly, Shaw does not contest that the indictment, when considered alongside the criminal judgment, reasonably indicates the existence of his criminal conviction.
 

 We thus conclude that § 1229a(c)(3)(B) did not prohibit the Board from considering Shaw's indictment.
 

 B.
 

 In the usual case, rejecting the arguments presented in the petition for review
 ends the analysis. We note that Shaw raised a new theory for the first time at oral argument: that DHS could not carry its burden to demonstrate his removability because the indictment in the administrative record-and, consequently, the indictment used by the Board to ascertain the object of Shaw's conspiracy-was not the indictment to which he pleaded guilty.
 

 Regardless of what, if any, merit this tardy argument has, we lack jurisdiction to consider it. Under § 1252(d)(1), we may review a "final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." We apply this exhaustion requirement not only to "final order[s] of removal" globally, but also to particular claims specifically.
 
 See
 

 Ramirez v. Sessions
 
 ,
 
 887 F.3d 693
 
 , 700 (4th Cir. 2018) (Gregory, C.J.) ("When an alien has an opportunity to raise a claim in administrative proceedings but does not do so, he fails to exhaust his administrative remedies as to that claim."). Thus, if an alien could have raised an argument before the Board, but didn't, we do not have the authority to consider the argument in the first instance.
 

 Here, we have little difficulty concluding that Shaw failed to exhaust his administrative remedies as to his claim that the record relied on by DHS was incomplete. Shaw's counsel admitted at oral argument that this argument was not presented to the Board. Oral Arg. at 34:15-34:40 (indicating that this issue "was not articulated" before the Board);
 
 see also id.
 
 at 31:45-32:30 (counsel for the Government agreeing). Shaw
 
 never
 
 argued before the IJ, the Board, or on brief to this Court that there was any defect in the conspiracy indictment, but only that
 
 all
 
 indictments were impermissible evidence.
 

 To fail to raise a legal theory before the Board is to abandon that theory.
 
 See, e.g.
 
 ,
 
 Tang v. Lynch
 
 ,
 
 840 F.3d 176
 
 , 183 (4th Cir. 2016) (holding failure to raise claim under Convention Against Torture with the Board prohibited consideration of that claim in a petition for review);
 
 Massis v. Mukasey
 
 ,
 
 549 F.3d 631
 
 , 638-40 (4th Cir. 2008) (rejecting argument, raised for the first time on appeal, that a state law did not constitute a "crime of violence" under the INA). In his notice of appeal to the Board, Shaw raised only two contentions. First, that the IJ "erred in holding that [he] was inadmissible because of a conspiracy conviction." A.R. 47. And second, that the IJ "erred in
 
 admitting records related to
 
 [
 
 his
 
 ]
 
 conviction that were beyond the certified record of conviction
 
 ." A.R. 47 (emphasis added). Only one of Shaw's arguments-the second-addressed the evidence of record. And that argument was solely whether or not an IJ can
 
 ever
 
 consider an indictment, any indictment, under the INA and its associated regulations.
 

 Shaw's new argument has no nexus to the arguments he previously made. Contrary to all his previous arguments, he
 
 now
 
 posits that indictments may be proper evidence of a conviction, but maintains that
 
 this indictment
 
 suffers a different, more significant problem: the indictment in the record wasn't the one to which he pleaded guilty. This argument was never raised before the IJ, the Board, or on brief before this Court. No party obtains relief for an argument first raised in oral argument to which neither the other party nor the Court was previously apprised.
 
 See
 

 Ramirez
 
 ,
 
 887 F.3d at 700
 
 (noting that this Court does not have the authority to consider "bases for relief that were not raised below").
 

 In sum, in earlier proceedings Shaw challenged the admissibility of a particular piece of evidence on statutory grounds, not that there was any insufficiency in the indictment itself. At oral argument, he raised a completely new argument to challenge
 the overall sufficiency of the evidence. He had not raised that contention anywhere before oral argument. Accordingly, we are without jurisdiction to address it.
 
 See
 

 8 U.S.C. § 1252
 
 (d)(1) (giving the courts of appeals jurisdiction over only those claims the alien has fully exhausted).
 

 IV.
 

 For those reasons, we find no error in the Board's conclusion that Shaw was inadmissible under the Controlled Substance Provision and therefore is subject to removal under
 
 8 U.S.C. § 1227
 
 (a)(1)(A). Shaw's petition for review accordingly is
 

 DENIED.
 

 As a lawful permanent resident, Shaw's re-entry into the United States from a trip abroad usually would not be considered "seeking admission into the United States for purposes of the immigration laws[.]"
 
 8 U.S.C. § 1101
 
 (a)(13)(C). In other words, in the ordinary case, lawful permanent residents are not removable under statutes governing aliens seeking admission. Shaw's case falls within an exception to this general rule. In particular, a lawful permanent resident
 
 is
 
 regarded as seeking admission if he "has committed an offense identified in section 1182(a)(2) [.]"
 

 Id.
 

 The Conspiracy Statute provides in full:
 

 A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
 

 (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
 

 (2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
 

 N.J. Stat. Ann. § 2C:5-2(a).
 

 Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.
 
 ,
 
 467 U.S. 844
 
 (1984).
 

 An inchoate crime is "[a] step toward the commission of another crime, the step itself being serious enough to merit punishment." Offense,
 
 Black's Law Dictionary
 
 (10th ed. 2014).
 

 Taylor v. United States
 
 ,
 
 495 U.S. 575
 
 ,
 
 110 S.Ct. 2143
 
 ,
 
 109 L.Ed.2d 607
 
 (1990).