**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-7472**

_____

UNITED STATES OF AMERICA,

        Petitioner - Appellee,

    v.

THOMAS HEYER,

        Respondent - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:08-hc-02183-BO)

_____

Argued: December 10, 2013      Decided: January 17, 2014

_____

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Motz and Judge Diaz concurred.

_____

**ARGUED:** Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Denise Walker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, R. A. Renfer, Jr., G. Norman Acker, III, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

AGEE, Circuit Judge:

Respondent-Appellant Thomas Heyer ("Heyer") appeals the district court's order of civil commitment following an evidentiary hearing pursuant to 18 U.S.C. § 4248. On appeal, Heyer—who is deaf and communicates through sign language—contends that the district court abused its discretion in only allowing simultaneous interpretation, rather than consecutive interpretation, during the evidentiary hearing. Heyer also contends that the district court clearly erred in finding him to be a "sexually dangerous person" under § 4248, and further erred in rejecting his equal protection and due process claims. For the reasons that follow, we affirm the judgment of the district court.

I.

A.

The Adam Walsh Child Protection and Safety Act of 2006 (the "Act"), 18 U.S.C. §§ 4247–4248, provides for the civil commitment of sexually dangerous persons following the expiration of their federal prison sentences. See 18 U.S.C. § 4248(a). A "sexually dangerous person" is one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." See 18 U.S.C. § 4247(a)(5). A person is considered "sexually

2

dangerous to others" if "the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. at § 4247(a)(6).

The Attorney General, his designee, or the Director of the Federal Bureau of Prisons ("BOP") may initiate a § 4248 commitment proceeding in the district court for the district in which the person is confined by filing a certification that the person is sexually dangerous within the meaning of the Act. See 18 U.S.C. § 4248(a). Such a filing automatically stays the release of the person from custody pending a hearing before the district court. See id. "If, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General." Id. § 4248(d).

B.

On December 18, 2008, the Government initiated this action by filing a certificate pursuant to 18 U.S.C. § 4248(a) in the United States District Court for the Eastern District of North Carolina seeking to have Heyer civilly committed as a "sexually dangerous person" under the Act. The certificate stated that mental health personnel for the BOP had examined Heyer and

3

issued a preliminary determination that he is "sexually dangerous" within the meaning of the Act.  See 18 U.S.C. § 4248(a) ("In relation to a person who is in the custody of the [BOP], . . . the Attorney General or any individual authorized by the Attorney General or the Director of the [BOP] may certify that the person is a sexually dangerous person, and transmit the certificate to the clerk of the court for the district in which the person is confined.").

Pursuant to 18 U.S.C. § 4247(d), the district court conducted an evidentiary hearing on May 30 and 31, 2012.[1]  Dr. Jeffrey Davis ("Dr. Davis") and Dr. Heather Ross ("Dr. Ross"), forensic psychologists, provided forensic reports and testified on behalf of the Government that Heyer met the criteria for civil commitment.  Dr. Diane Lytton ("Dr. Lytton"), a forensic psychologist, provided a forensic report and testified on behalf of Heyer that he did not meet the criteria for commitment.  In addition, Dr. Jean Andrews ("Dr. Andrews"), an expert in deafness and psychosocial issues related to deafness, also provided a report and testified on behalf of Heyer.

---

[1] We note that the four-year delay between the date the Government filed the § 4248 certificate on December 18, 2008, to the date of the hearing on May 30 and 31, 2012, is primarily attributable to the stay imposed in relation to United States v. Comstock, 560 U.S. 126 (2010); see also United States v. Comstock, 627 F.3d 513 (4th Cir. 2010); United States v. Comstock, 551 F.3d 274 (4th Cir. 2009).

4

At the hearing, Heyer initially moved the court to provide him with consecutive, rather than simultaneous, interpreting. The district court denied Heyer's request, stating, "Well, it's a civil case. The answer is no. We are not going to make this into a marathon." (J.A. 87.)

Based on the evidence presented, the district court adopted the following undisputed findings of fact. Heyer is deaf and communicates through American Sign Language ("ASL"). Throughout his youth, Heyer was assaulted and molested numerous times. In 1989, at age twenty-two, Heyer was convicted of terroristic threats after getting into an argument with a man who accused him of molesting his eight-year-old son. Around the same time, Heyer was also convicted of burglary and armed robbery.

In 1993, Heyer molested a ten-year-old boy, then tied the boy up and placed him in a hole. He was convicted of kidnapping and sentenced to ten years in prison. In the several years following Heyer's release from prison, he was convicted of a series of misdemeanors, including offenses for public intoxication, driving under the influence, reckless endangerment, vandalism, and passing a bad check.

Around 2002, Heyer was found to have approximately 180 images of child pornography in his possession. He subsequently pled guilty to possession of child pornography. Upon his release from prison for the child pornography conviction, he

5

began sex offender treatment while on supervised release. His supervised release, however, was revoked in 2007 when he showed up at a treatment session under the influence of alcohol.

Heyer also admitted to the following additional facts during a deposition which was admitted into the record. Heyer admitted that while he was on probation, he looked at "a lot of different websites that were triple-x," (J.A. 432), and masturbated to those images (J.A. 432–33). The pictures Heyer viewed included adults and children together in sexual situations; he also admitted that he showed some of these pictures to [redacted], a young teenage boy whom he had befriended. Heyer further admitted to having engaged in sexual activity, including mutual masturbation and oral sex with [redacted] while [redacted] was a young teenager, and that such sexual activity occurred over a period of approximately one-and-a-half years. Although Heyer knew that having sex with [redacted] was wrong, he continued the activity because "I liked it and he was willing." (J.A. 450.) He also told [redacted] that he liked having sex with other children.

In addition, Heyer admitted to having had sexual contact with between eighteen and twenty-five boys after he turned eighteen years old. Among other child victims Heyer molested

6

was his nephew, whom he molested when the nephew was approximately six years old.[2]

Heyer also admitted to using both marijuana and cocaine while he was on probation during 2007 and that he went to sex offender treatment "drunk" during this time. (J.A. 456.) According to Heyer, he did not consider himself to be "drunk" previously when he was arrested for driving under the influence (despite blowing a 0.17 on the blood alcohol test) because he was "able to walk straight." (J.A. 442.)

According to Dr. Lytton, Heyer's own expert examiner, Heyer admitted to the following additional facts during his interview with her. He "described his adolescent years as plagued by fighting and being the victim of sexual aggression." (J.A. 627–28.) In addition, Heyer admitted that his "typical pattern as a young adult was to spend his entire paycheck on an alcohol binge, and live meagerly until the next payday." (J.A. 627.)

Heyer further admitted that he "often exposed himself to strangers in efforts to gauge their sexual interest in him," and that he would "attempt to view other people's private parts when in bathrooms or showers." (J.A. 628.) He also admitted "to some arousal to pre-pubescent boys, around age eight," and "to

---

[2] It is unclear whether this happened on more than one occasion, since Heyer indicated that the molestation "stopped" when his nephew was six years old. (J.A. 489.)

fondling a number of young boys, incidents for which he was not investigated or charged." (J.A. 628.) Lastly, during the commission of the crime in 1993 where he kidnapped and molested a boy, then tied him up and left him in a hole, Heyer admitted that he "buried the boy to avoid detection" and then was "deceptive with police, and did not provide information that would have led to the discovery of the boy." (J.A. 629.)

Both of the experts that testified for the Government, Dr. Ross and Dr. Davis, opined that Heyer suffered from pedophilia, as well as other mental disorders—including antisocial personality disorder and substance abuse problems—and would have serious difficulty refraining from future acts of child molestation if released. Dr. Lytton, who testified on these issues for Heyer, opined that she did not believe he currently suffers from either pedophilia or antisocial personality disorder. She acknowledged, however, that "Heyer's criminal history includes past behaviors that suggest he may have met such criteria [for pedophilia] at that time." (J.A. 631.) Dr. Lytton further opined that "[i]t would be difficult to argue that Mr. Heyer did not meet the criteria [for antisocial personality disorder] in the past." (J.A. 631.)

On July 9, 2012, the district court issued its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a)(1), concluding that the Government had proven by

8

clear and convincing evidence that Heyer was a "sexually dangerous person" within the meaning of the Act. Specifically, the district court found that Heyer currently suffers from the serious mental illness of pedophilia, and that Dr. Ross and Dr. Davis had provided a more convincing analysis than Dr. Lytton. The court concluded that the Government had "met its burden to demonstrate by clear and convincing evidence that Mr. Heyer suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty refraining from sexually violent conduct or child molestation if released." (J.A. 521.) The district court accordingly committed Heyer to the custody of the Attorney General pursuant to 18 U.S.C. § 4248.

Heyer timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

On appeal, Heyer contends that the district court (1) abused its discretion in allowing only simultaneous interpretation, rather than consecutive interpretation, during the evidentiary hearing; (2) clearly erred in finding him to be a "sexually dangerous person" under 18 U.S.C. § 4248; and (3) erred in rejecting his equal protection and due process claims. We address each argument in turn.

9

Heyer first contends that the district court abused its discretion in allowing only simultaneous interpretation, rather than consecutive interpretation, during the evidentiary hearing. Heyer asserts his claim under the authority of the Court Interpreters Act ("CIA"), 28 U.S.C. §§ 1827–28. We review the district court's final determination on the appointment and use of interpreters for an abuse of discretion, as the district court "is in the best position to evaluate the need for and the performance of interpreters." United States v. Sandoval, 347 F.3d 627, 632 (7th Cir. 2003); accord United States v. Camejo, 333 F.3d 669, 673 (6th Cir. 2003); United States v. Urena, 27 F.3d 1487, 1492 (10th Cir. 1994). To the extent that Heyer claims a hearing on this issue was required, such a claim is reviewed for plain error since he did not request such a hearing in the district court. United States v. Olano, 507 U.S. 725, 731–32 (1993); United States v. Hastings, 134 F.3d 235, 239 (4th Cir. 1998).

Initially, we note that the CIA requires only simultaneous interpretation for non-witnesses, unless the court rules otherwise:

> The interpretation provided by certified or otherwise qualified interpreters pursuant to this section shall be in the simultaneous mode for any party to a judicial proceeding instituted by the United States and in the

10

> consecutive mode for witnesses, except that
> the presiding judicial officer, sua sponte
> or on the motion of a party, may authorize a
> simultaneous, or consecutive interpretation
> when such officer determines after a hearing
> on the record that such interpretation will
> aid in the efficient administration of
> justice.

28 U.S.C. § 1827(k) (emphasis added).  The statute explicitly provides that interpretation "shall be in the simultaneous mode" for non-witnesses, unless the district court rules otherwise.[3] Id.  The effective presumption of simultaneous interpretation will change only if the district court determines that it "will aid in the efficient administration of justice."  Id.

In this case, the sum and substance of the district court's ruling was that consecutive interpretation would not "aid in the efficient administration of justice," id., because consecutive interpretation of the entire proceeding would have unduly delayed and enlarged the evidentiary hearing.  When the district court inquired as to why Heyer wanted consecutive interpretation, Heyer's attorney responded, "[b]ecause the potential problem is that we could be way down the road before we realize that Mr. Heyer doesn't understand something."  (J.A.

---

[3] If Heyer had testified, he would have been entitled to consecutive interpretation during his testimony, unless the district court ruled otherwise.  See 28 U.S.C. § 1827(k).  Heyer did not testify at the evidentiary hearing and makes no claim to consecutive interpretation on the witness portion of the statute.

11

87.) That single response was the complete rationale proffered for departure from the statutory presumption of simultaneous interpretation with no tender by Heyer, then or now, of what a "potential problem" might be. (J.A. 87.) Moreover, at no point during the two-day hearing did Heyer or his attorney indicate to the district court that Heyer did not understand the proceedings. Thus, there was never any indication that the speculative "potential problem," (J.A. 87), had become an actual problem.

Moreover, the district court made a number of substantial accommodations to help Heyer understand the proceedings.[4] The court provided both qualified and certified legal interpreters, as well as certified deaf interpreters, so that a total of four interpreters were present at all times during the two-day hearing. An interpreter was also permitted to sit with Heyer at counsel table throughout the proceeding. The district court also allowed Heyer, on several occasions, to stop the proceedings if he did not understand what was going on.

Further, contrary to Heyer's assertion, the district court was not required to hold a hearing on whether or not to grant

---

[4] Prior to trial, Dr. Andrews, Heyer's linguistic expert, made six recommendations to the district court concerning accommodations that would help Heyer understand the proceedings. The only accommodation that the district court did not grant in toto was the suggestion of consecutive interpretation throughout the hearing.

the request for consecutive interpretation. The CIA provides that "the presiding judicial officer, sua sponte <u>or on the</u> <u>motion of a party, may</u> authorize . . . consecutive interpretation when such officer determines after a hearing on the record that such interpretation will aid in the efficient administration of justice." 28 U.S.C. § 1827(k) (emphasis added). Heyer made no request for a hearing in the district court, and did not object to the district court's denial of the request for consecutive interpretation. Accordingly, the district court's decision to not hold a hearing sua sponte is reviewed only for plain error. <u>Olano</u>, 507 U.S. at 731–32; <u>Hastings</u>, 134 F.3d at 239. To succeed, Heyer must demonstrate that an error occurred, that the error was plain, and that the error affected his substantial rights. See <u>Olano</u>, 507 U.S. at 732; <u>Hastings</u>, 134 F.3d at 239. Even if Heyer can satisfy these requirements, correction of the error remains in the Court's sound discretion, which it "'should not exercise . . . unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>Hastings</u>, 134 F.3d at 239 (quoting <u>Olano</u>, 507 U.S. at 732) (internal quotation marks and alteration omitted).

Heyer is unable to show any error here, much less plain error. It is unclear what evidence, if any, Heyer would have submitted during a hearing on the matter that had not already

13

been presented through the report of Dr. Andrews, which had been filed with the district court more than five months prior to the hearing. In his briefing, Heyer does not indicate any additional information that he would have submitted to the district court on this issue. Further, Heyer cites no case law in which any court has held that the refusal to hold a hearing on whether to grant such a motion was an abuse of discretion, much less plain error. Moreover, there is no evidence that Heyer suffered any prejudice from the district court's failure to hold a hearing on this issue.

Lastly, Heyer contends that the district court based its refusal to grant consecutive interpretation on a "mistake of law," which he claims is a per se abuse of discretion. Heyer bases his argument on a single statement by the district court that this is a civil matter, rather than a criminal proceeding:

> THE COURT: Why do you want [consecutive interpretation]?
>
> MS. GRAVES [Counsel for Heyer]: Because the potential problem is that we could be way down the road before we realize that Mr. Heyer doesn't understand something.
>
> THE COURT: Well, it's a civil case. The answer is no. We are not going to make this into a marathon.
>
> MS. GRAVES [Counsel for Heyer]: Thank you, Your Honor.

14

(J.A. 87.) According to Heyer, this statement by the district court shows that it did not understand that the CIA applies to civil and criminal cases without distinction. We disagree. The district court merely indicated that, in the exercise of its discretion under § 1827(k), it was less likely to grant such a request in a civil case than in a criminal case. There was no suggestion by the district court or the Government that the court was without authority to grant the motion; only that it chose not do so in this civil commitment case.[5]

Accordingly, we affirm the judgment of the district court in denying Heyer's request for consecutive interpretation.

---

[5] Heyer also asserts that the district court's refusal to grant consecutive interpretation violated his due process rights. As with his statutory argument under the CIA, however, Heyer never objected to the district court's denial of consecutive interpretation below and raises this argument for the first time on appeal. Moreover, as we have already pointed out, the district court fully complied with 18 U.S.C. § 1827 and made substantial accommodations to help Heyer understand the proceedings. And, as also noted above, Heyer made no showing at trial, or on appeal, of any actual prejudice. Heyer further acknowledges that "his due process rights as a civil commitment respondent are not as extensive as those afforded a criminal defendant." (Opening Br. 29 n.8.) We find Heyer's due process claim to be meritless.

15

B.

Heyer next contends that the district court clearly erred in finding him to be a "sexually dangerous person" under 18 U.S.C. § 4248.

To obtain a commitment order against Heyer, the Government was required to establish three distinct facts by clear and convincing evidence: that Heyer (1) "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) currently "suffers from a serious mental illness, abnormality, or disorder"; and (3) as a result of the illness, abnormality, or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(a)(6); see also United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Jiminez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted).

On appeal, we review the district court's factual findings for clear error and its legal conclusions de novo. See Fed. R. Civ. P. 52(a)(6); Hall, 664 F.3d at 462. A finding is "clearly

16

erroneous" only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Hall, 664 F.3d at 462. "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer, N.C., 470 U.S. 564, 573 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 573–74.

"When findings are based on determinations regarding the credibility of witnesses," we give "even greater deference to the trial court's findings." Id. at 575. In particular, "[e]valuating the credibility of experts and the value of their opinions is a function best committed to the district courts, and one to which appellate courts must defer," and the Court "should be especially reluctant to set aside a finding based on the trial court's evaluation of conflicting expert testimony." Hendricks v. Cent. Reserve Life Ins. Co., 39 F.3d 507, 513 (4th Cir. 1994).

We conclude that the district court did not clearly err in finding Heyer to be a "sexually dangerous person" within the

17

meaning of the Act because a review of the record demonstrates that the court properly considered all of the relevant evidence— including Heyer's deafness and linguistic difficulties—to reach the appropriate decision.

There is no dispute that Heyer engaged in past acts of child molestation, as evidenced by his prior convictions. Thus, the district court properly found that the Government established the first element of sexual dangerousness by clear and convincing evidence. See 18 U.S.C. § 4247(a)(5). The crux of this issue, therefore, is whether the district court clearly erred in finding that the Government proved, by clear and convincing evidence, that Heyer suffers from pedophilia, "a serious mental illness, abnormality, or disorder," as a result of which he "would have serious difficulty in refraining from sexually violent conduct or child molestation if released" from custody. 18 U.S.C. § 4247(a)(6). Specifically, Heyer contends that the district court did not adequately take into consideration his deafness and linguistic difficulties in reaching its decision about whether or not he is a "sexually dangerous person" within the meaning of the Act. A review of the district court's order, however, belies Heyer's assertion.

The district court clearly considered Heyer's deafness and linguistic difficulties at length in reaching its Findings of Fact and Conclusions of Law.

18

> Mr. Heyer was born prelingually and profoundly deaf. Because of Mr. Heyer's unique circumstances and his severe deficits in linguistic functioning, Dr. Jean Frances Andrews, Director of Graduate Programs in Deaf Education at Lamar University, testified in regard to Mr. Heyer's linguistic competence. Dr. Andrews opined in her report that Mr. Heyer's reading level was at grade level 2.8 and that he lacks the advanced ASL skills required for interaction beyond social settings. The Court credits Dr. Andrews' testimony that Mr. Heyer has severe deficits in linguistic functioning. For that reason, the Court does not rely in its analysis on Mr. Heyer's comprehension of the book <u>Slave Sons</u>, depicting sadistic sexual acts between a father and son, as Dr. Andrews testified that the book was written at grade level 7.8 and was well beyond Mr. Heyer's understanding.

(J.A. 525–26 (internal citations omitted).) The court went on:

> The Court has also taken into account the fact that Mr. Heyer's "statements" in clinical interviews are actually translations provided by interpreters and that some of the testifying psychologists [Dr. Ross and Dr. Davis] have not had experience in evaluating deaf individuals. Despite these qualifiers, the Court remains convinced that Mr. Heyer currently suffers from pedophilia, and that he would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

(J.A. 526 (internal citations omitted).) These statements by the district court indicate that it properly took into account Heyer's deafness and linguistic difficulties in evaluating the evidence. Despite this factor, however, the court found the

19

opinions of Dr. Ross and Dr. Davis to be more persuasive on the determinative issues.

Further, a review of the entire record demonstrates that the district court's factual findings are not clearly erroneous. To determine whether Heyer currently suffered from a serious mental disorder, the district court properly quoted the criteria set out in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR") concerning the definition of pedophilia. The court went on to discuss the evaluations of all three experts on this subject, including Dr. Heyer's expert, Dr. Lytton. In diagnosing Heyer with pedophilia, Dr. Davis placed great weight upon Heyer's history of molestation offenses against prepubescent children, his possession of child pornography, his demonstrated sexual arousal to prepubescent males during a penile plethysmograph assessment, and his acknowledged sexual attraction to male children. Dr. Ross cited to Heyer's self-report of engaging in pedophilic behaviors for a period of at least thirteen years, a penile plethysmograph that showed the greatest arousal response to males ages six to eleven, and Heyer's child pornography conviction. Finally, both Dr. Davis and Dr. Ross opined that pedophilia tends to be a chronic and life-long illness.

In contesting the validity of the diagnosis, Dr. Lytton reasoned that the penile plethysmograph tests produced results that the examiners described as clinically insignificant, that Heyer's sexual offending pattern appears to have de-escalated as evidenced by his last contact offense having occurred in 1993, and that Heyer's current sexual interests suggest that he is interested in consensual adult homosexual activities.

The district court concluded that Dr. Ross' and Dr. Davis' opinions were well-reasoned, but that Dr. Lytton had "not provided a persuasive justification as to why Mr. Heyer no longer satisfies the relevant diagnostic criteria."[6] (J.A. 523.) Absent evidence that Heyer's pedophilia had "abated or dissipated," the district court concluded that the Government had met its burden by clear and convincing evidence that Heyer currently suffers from pedophilia. (J.A. 523.) On appeal, Heyer has cited no evidence upon which we can conclude that the opinions of Drs. Davis and Ross were unreasonable, and we thus cannot say that the district court clearly erred in crediting their opinions over Dr. Lytton's.

---

[6] Dr. Lytton acknowledged in her report that "Mr. Heyer's criminal history includes past behaviors that suggest he may have met such criteria [for pedophilia] at that time." (J.A. 631.) In other words, Dr. Lytton acknowledges that Heyer was likely a pedophile in the past, but does not believe that he currently meets the criteria for that diagnosis.

21

The district court also properly considered the evidence and weighed the testimony of the experts in finding that the Government had established, by clear and convincing evidence, that Heyer, as a result of pedophilia, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). The experts considered actuarial tests, psychological tests, and Heyer's individual circumstances to make clinical judgments based upon their evaluations. Viewed in light of his individual circumstances and dynamic risk factors, the district court found that Heyer's "actuarial assessment results [we]re consistent with his ongoing serious difficulty in refraining from sexually violent conduct or child molestation." (J.A. 525.) The district court credited "the testimony and report of Dr. Davis, who focused on Heyer's impulsivity, poor sexual self-regulation, and poor compliance with supervision when in the community," as well as the "evidence of Heyer's ongoing sexual interest in children, as noted by Dr. Ross." (J.A. 525.) Heyer has failed to show that the opinions of Drs. Davis and Ross were unreasonable, and we therefore cannot say that the district court clearly erred in crediting their opinions.

In sum, we conclude that the district court's factual findings are a permissible and reasonable interpretation of the evidence presented at the hearing. Because we are not "left

22

with the definite and firm conviction that a mistake has been committed," United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948), we cannot say that the district court clearly erred in finding that Heyer is a "sexually dangerous person" within the meaning of the Act.

C.

Finally, Heyer contends that the district court erred in rejecting his equal protection and due process claims. Specifically, Heyer asserts that (1) section 4248 deprives him of his right to equal protection because it draws an improper classification by subjecting BOP individuals to § 4248 commitment while exempting all others under federal control; and (2) the district court erred in holding that § 4248 is a civil, rather than criminal, statute and consequently, the statute is unconstitutional on the grounds that it fails to adequately protect various rights afforded to criminal defendants.

Heyer's claims are foreclosed by our decision in United States v. Timms, 664 F.3d 436 (4th Cir. 2012), in which we plainly rejected both of the above-mentioned claims.[7] As one panel of the Court may not overrule another panel, the Timms

---

[7] Heyer acknowledges that his claims are foreclosed by Timms, but nevertheless "raises them here as a good faith argument for a change in the law and to preserve them for en banc or Supreme Court review." (Opening Br. 42.)

decision is not reviewable unless a motion to rehear en banc is granted.  Gladhill v. Gen. Motors Corp., 743 F.2d 1049, 1050–51 (4th Cir. 1984) ("As a single panel of this court, we lack authority to re-examine or to overrule [an existing decision in the circuit] short of an intervening Supreme Court decision" or en banc review.).  Accordingly, we conclude that the district court did not err in rejecting Heyer's equal protection and due process claims.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED