**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1213

ANDREW RICHARD SHAW,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 20, 2018                                    Decided: August 7, 2018

Before GREGORY, Chief Judge, and WILKINSON and AGEE, Circuit Judges.

Petition for review denied by published opinion. Judge Agee wrote an opinion, in which Judge Wilkinson joined. Chief Judge Gregory wrote a dissenting opinion.

**ARGUED:** Lida Duke Angier, DEHGHANI & ASSOCIATES, LLC, New Haven, Connecticut, for Petitioner. Anna Juarez, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Kevin E. Dehghani, Ross W. Hakala, DEHGHANI & ASSOCIATES, LLC, New Haven, Connecticut, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

AGEE, Circuit Judge:

Petitioner Andrew Richard Shaw, a native and citizen of the United Kingdom and a Lawful Permanent Resident, was convicted under New Jersey law of conspiracy in the third degree and was sentenced to two years' probation. Later, after returning from a trip abroad, the Department of Homeland Security ("DHS") determined that Shaw was inadmissible under Section 212(a)(2)(A)(i)(II) (the "Controlled Substance Provision") of the Immigration and Nationality Act (the "INA"), denied him entry into the United States and began removal proceedings. The Controlled Substance Provision states, "[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21) . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(II). An immigration judge ("IJ") agreed, concluded that Shaw was inadmissible, and ordered him removed under 8 U.S.C. § 1227(a)(1)(A).[1] The Board of Immigration Appeals (the "Board") dismissed Shaw's appeal.

Shaw now petitions this Court for review. We find no error with the Board's decision and deny Shaw's petition for review.

---

[1]   As a lawful permanent resident, Shaw's re-entry into the United States from a trip abroad usually would not be considered "seeking admission into the United States for purposes of the immigration laws[.]" 8 U.S.C. § 1101(a)(13)(C). In other words, in the ordinary case, lawful permanent residents are not removable under statutes governing aliens seeking admission. Shaw's case falls within an exception to this general rule. In particular, a lawful permanent resident *is* regarded as seeking admission if he "has committed an offense identified in section 1182(a)(2)[.]" *Id.*

2

I.

In March 2007, Shaw was charged in New Jersey state court with, among other things, possession of "twenty-five pounds or more" of marijuana with the intent to distribute and conspiracy to commit that crime. A.R. 195. Shaw pleaded guilty to the conspiracy offense and the state court sentenced him to two years' probation. As relevant to Shaw's instant petition, the statute to which he pleaded guilty, N.J. Stat. Ann. § 2C:5-2 (the "Conspiracy Statute"), is a generic conspiracy statute: it forbids any agreement to "engage in conduct which constitutes [a] crime." N.J. Stat. Ann. § 2C:5-2(a).[2] In exchange for his plea, the State dismissed the remaining charges in the indictment.

Several years after Shaw's conviction, he briefly left the United States for the United Kingdom. In June 2014, Shaw returned to the United States through Raleigh–Durham International Airport, in North Carolina. At the airport, Shaw applied for admission to the United States as a lawful permanent resident. His application was denied.

---

[2] The Conspiracy Statute provides in full:
A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

N.J. Stat. Ann. § 2C:5-2(a).

Following that denial of admission, DHS initiated removal proceedings by serving Shaw with a Notice to Appear. The operative Notice to Appear alleged that Shaw was subject to removal because his conviction under the Conspiracy Statute rendered him inadmissible under the Controlled Substance Provision.

Shaw contested his removability and filed a motion to terminate the removal proceedings, contending that he was not inadmissible under the Controlled Substance Provision. According to Shaw, the Conspiracy Statute did not categorically relate to a controlled substance and, thus, that he was not inadmissible under the Controlled Substance Provision. He also maintained that the Conspiracy Statute was not divisible and, therefore, that the IJ should use the categorical rather than the modified categorical approach adopted in *Descamps v. United States*, 570 U.S. 254 (2013). Under the categorical approach, the Board would examine the fact of Shaw's conviction, not its circumstances, to determine whether the Conspiracy Statute as a whole necessarily related to a controlled substance. *See Omargharib v. Holder*, 775 F.3d 192, 196 (4th Cir. 2014). The "modified categorical approach applies only if a state crime consists of multiple, alternative elements creating several different crimes, some of which would" necessarily involve a controlled substance, and others that would not. *Id.* (internal quotation marks omitted).

The IJ rejected Shaw's arguments. At the outset, the IJ determined that neither the categorical nor the modified categorical approach was appropriate, but rather that the Controlled Substance Provision required application of the "circumstance-specific" approach. Under that approach, the IJ may review the "attendant circumstance[s] of the

4

underlying conviction." *Hernandez-Zavala v. Lynch*, 806 F.3d 259, 263 (4th Cir. 2015). To determine those attendant circumstances, the IJ consulted the indictment and criminal judgment in Shaw's New Jersey criminal case. Relying on those documents, the IJ concluded that Shaw's Conspiracy Statute conviction was founded on a conspiracy to distribute more than twenty-five pounds of marijuana, a controlled substance. The IJ thus held that Shaw was inadmissible, denied Shaw's motion, and ordered him removed.

Shaw appealed the IJ's order to the Board. There, he principally contended that the IJ "erred in holding that [he] was inadmissible because of a conspiracy conviction." A.R. 47. In other words, Shaw stuck to his previously unsuccessful position and argued that his conviction did not categorically relate to a controlled substance and that the Conspiracy Statute was otherwise indivisible. Shaw also introduced a back-up position: even if the Conspiracy Statute were divisible, the IJ improperly considered the indictment in contravention of 8 C.F.R. § 1003.41, which, Shaw argued, prohibited the use of indictments (and other non-certified court documents) as evidence in removal proceedings.

The Board dismissed Shaw's appeal. Initially, it rejected the IJ's use of the circumstance-specific approach. Even so, the Board concluded that the IJ's methodology—reviewing the indictment—was permissible because the Conspiracy Statute was divisible. Finally, reviewing the IJ's conclusion, the Board agreed: Shaw's conviction under the Conspiracy Statute rendered him inadmissible.

Shaw timely petitioned this Court for review of the Board's adverse decision. We have jurisdiction to consider Shaw's petition for review under 8 U.S.C. § 1252.

5

II.

We review the Board's legal determinations de novo, but afford *Chevron*[3] deference to those determinations when the Board interprets or applies the INA. *Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012). We have limited power to review administrative findings of fact. Such "facts are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III.

A.

In his petition for review, Shaw revisits his earlier-made arguments. First, he contends that the Board improperly applied the modified categorical approach and should have used the categorical approach. Consequently, Shaw argues that the Board should have looked no further than the face of the Conspiracy Statute. He also asserts that, even if the Conspiracy Statute were divisible, his indictment wasn't proper evidence under the INA. We address each of these arguments in turn.

1.

Shaw first contends that the Board must apply the categorical approach to a generic conspiracy conviction like that at issue here; it cannot consider the conspiracy's object. Accepting Shaw's argument would mean that the Board could not look beyond the fact of his conviction to determine whether it involved a controlled substance. Shaw

---

[3] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 844 (1984).

gives two reasons to support his position: First, such statutes are not divisible because they do not list alternative elements, but rather only one crime: conspiracy. Second, generic conspiracy statutes do not categorically relate to any controlled substance because they touch on any agreement to violate the law. We find Shaw's contention without merit.

Shaw's argument rests on the incorrect assumption that the Board must analyze inchoate crimes—attempt, conspiracy, and solicitation—like any other: by looking only to the elements of the statute criminalizing the inchoate conduct.[4] But Board precedent recognizes that inchoate crimes are unique because they "presuppose[] a purpose to commit another crime." *See Matter of Beltran*, 20 I. & N. Dec. 521, 526–27 (B.I.A. 1992). That distinction, in turn, makes the underlying criminal purpose—the statute the alien conspired to violate, for example—the focal point of the Board's analysis.

In *Matter of Beltran*, the Board held that if the object of an inchoate offense "would constitute a ground of deportability under [the Controlled Substance Provision]," it would "likewise consider a conviction for solicitation [or attempt or conspiracy] to commit that crime to be a violation of a law 'relating to a controlled substance.'" *Id.* at 527. More specifically, the Board looked through the aliens' conviction under Arizona's generic criminal solicitation statute and, instead, analyzed whether the solicited crime— possession of narcotic drugs—was a ground for inadmissibility under the Controlled

---

[4] An inchoate crime is "[a] step toward the commission of another crime, the step itself being serious enough to merit punishment." Offense, *Black's Law Dictionary* (10th ed. 2014).

Substance Provision. *See id.* at 525–27. And, regardless of the term used by the Board, it followed that same procedure here: faced with a generic conspiracy statute, it looked through the statute and performed its categorical analysis on the object of Shaw's conspiracy: possession of a controlled substance with the intent to distribute it.

With Board precedent solidly against his position, Shaw argues that the result compelled by *Matter of Beltran* is contrary to law. *See* 8 U.S.C. § 1252(b)(4)(C) ("[A] decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law."). We disagree.

Indeed, the procedure the Board used in *Beltran* mirrors our own precedent applying the categorical approach to inchoate crimes. *See United States v. Ward*, 171 F.3d 188 (4th Cir. 1999). In *Ward*, we held that—when a sentencing court must determine if a defendant's conviction under a generic conspiracy statute is categorically identical to a generic federal crime—it should look beyond the statute and, instead, apply the categorical approach to the conspiracy's object. *Id.* at 192–93. The defendant in *Ward* had been convicted under Virginia's generic conspiracy statute for a conspiracy to commit the underlying crime of robbery. *Id.* at 192. We were asked to determine whether that crime qualified as a "crime of violence" under *United States Sentencing Guidelines Manual* § 4B1.2. To answer that question, we looked through the generic conspiracy statute and analyzed the object of the conspiracy: Virginia's robbery offense. The Court explained:

> Before one may be convicted of a conspiracy charge, it must always be asked: "conspiracy to do what?" Though Virginia's conspiracy statute does not explicitly include as an element "the use, attempted use, or threatened

8

use of physical force against the person of another," that element logically must be proven to support a conviction for conspiracy to commit a violent felony. Simply because some conspiracy convictions will not be predicate offenses, *Taylor*'s categorical approach[5] does not require a finding that all conspiracy convictions are exempt from serving as predicate offenses. Such a rule would ignore the policy underlying *Taylor*'s categorical approach as one meant "to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." To give full effect to this policy, it is critical to determine the object of the conspiracy.

*Id.* at 192–93 (internal citations omitted). The Court then looked to "the record of conviction, the charging document, and the jury instructions" to learn the object of the conspiracy. *Id.* at 193. Just as the Board's analysis was faithful to its decision in *Matter of Beltran*, so, too, was it faithful to the procedure this Court applied in *Ward*.

This analysis and outcome are consistent with the approach adopted by the other circuit courts of appeals. *See, e.g.*, *Mizrahi v. Gonzales*, 492 F.3d 156 (2d Cir. 2007); *Peters v. Ashcroft*, 383 F.3d 302, 306–07 (5th Cir. 2004) (upholding the Board's application of *Matter of Beltran* to an Arizona solicitation law); *see also Coronado-Durazo v. INS*, 123 F.3d 1322, 1325 (9th Cir. 1997) (declining to apply similar language in 8 U.S.C. § 1251(a)(2) to a solicitation conviction, but noting that "aliens who have been convicted . . . of conspiracy or attempt to violate" a controlled substance law are deportable). In *Mizrahi*, for example, the Second Circuit held that it was proper for the Board to consider the indictment and other case-specific documents to determine whether the inchoate offense of criminal solicitation qualified as a conviction relating to a controlled substance. 492 F.3d at 156–57. The court noted that inchoate offenses, like

---

5 *Taylor v. United States*, 495 U.S. 575 (1990).

solicitation or conspiracy, become criminal only if the defendant's conduct is tied to "the criminally proscribed object of another statute": "a defendant is guilty not of generic conspiracy, but of conspiracy to *murder*; not of generic attempt, but of attempt to *kidnap*; not of generic solicitation, but of solicitation *to sell drugs*." *Id.* at 161. Thus, relying on *Matter of Beltran*, and for reasons nearly identical to those articulated in *Ward*, the *Mizrahi* court concluded that the Board could review the plea agreement to determine whether the alien's conviction for an inchoate offense rendered him inadmissible. *Id.* at 173–75.

We thus conclude the Board correctly looked through the Conspiracy Statute to review the criminal object of the conspiracy to which Shaw pleaded guilty—possession of more than twenty-five pounds of marijuana with the intent to distribute. Shaw necessarily conspired to do something. Without the power to consult the indictment, the Board would have been unable to learn the object of that conspiracy. To remove that tool from the Board's reach, as Shaw requests, would inhibit its ability to enforce the INA. That conclusion is especially true here, as the Controlled Substance Provision explicitly contemplates the Board applying it to aliens convicted of conspiracy offenses. 8 U.S.C. § 1182(a)(2)(A)(i)(II).

Assured that the Board applied the proper procedure, we briefly address its conclusion: that Shaw's conspiracy conviction relates to a controlled substance. The administrative record shows that the object of Shaw's conspiracy was the possession of a significant amount of marijuana with the intent to distribute it. Marijuana is a controlled substance, listed in Schedule I of the Controlled Substances Act. *See* 21 U.S.C. § 802(6)

10

("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in [any] schedule . . . [found in] part B[.]"); *id.* § 812 sch. I (listing "marihuana" as a Schedule I controlled substance). Accordingly, any crime involving marijuana—like the one to which Shaw pleaded guilty—is a crime relating to a controlled substance.

In sum, the Board correctly determined that Shaw was convicted of a conspiracy related to the distribution of a controlled substance. That conviction, in turn, rendered Shaw inadmissible under the Controlled Substance Provision and, therefore, subject to removal under § 1227(a)(1)(A).

2.

We next consider whether DHS may use an indictment as evidence of a conviction in a removal proceeding. The INA, specifically 8 U.S.C. § 1229a, provides extensive detail about the conduct of such proceedings. DHS "has the burden of establishing by clear and convincing evidence" that an alien is deportable. *See* 8 U.S.C. § 1229a(c)(3)(A). When the alien's criminal history is at issue, § 1229a lists items that "shall constitute proof of a criminal conviction," which include:

- An official record of judgment and conviction.

- An official record of plea, verdict, and sentence.

- A docket entry from court records that indicates the existence of the conviction.

- Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

11

- An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.

- Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

- Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

*Id.* § 1229a(c)(3)(B). A similarly worded regulation indicates that the same documents "shall be admissible as evidence in proving a criminal conviction." 8 C.F.R. § 1003.41(a). The regulation further makes clear that "[a]ny other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof." *Id.* § 1003.41(d).

According to Shaw, the Board could not rely on his indictment because § 1229a(c)(3)(B) exclusively defines the universe of evidence DHS may use to prove the fact of a conviction. Because an indictment is not listed, Shaw contends that its use by the Board is categorically foreclosed. Shaw further argues that, because the list of evidence included in the INA is exclusive, the associated regulation, which permits reliance on additional evidence, conflicts with the plain language of § 1229a and is therefore invalid. Again, we disagree with Shaw.

We interpret statutes by examining their plain language. *See Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007). Section 1229a(c)(3)(B) provides that the

12

certified court documents listed therein "shall constitute proof of a criminal conviction." The "shall constitute proof" language is clear: if DHS introduces one of those items, the IJ and Board *must* treat such an item as conclusive proof of a conviction. But, the list in § 1229a(c)(3)(B) only sets out what evidence must be treated as conclusive; it contains no language excluding other types of reliable evidence. The statute does not require the IJ or the Board to ignore other persuasive evidence from DHS. To the contrary, the fact a document is not included in § 1229a(c)(3)(B)'s list of records "does not render [it] per se inadmissible." *See Fraser v. Lynch*, 795 F.3d 859, 863–64 (8th Cir. 2015). That's where the regulations governing removal proceedings come into play. When DHS chooses to rely on documents outside of the § 1229a(c)(3)(B) list, the regulation, 8 C.F.R. § 1003.41(d), provides that DHS may do so—and that the IJ and the Board may consider those documents—so long as such documents "reasonably indicate[] the existence of a criminal conviction." 8 C.F.R. § 1003.41(d). Here, the indictment was proper evidence under 8 C.F.R. § 1003.41(d). Significantly, Shaw does not contest that the indictment, when considered alongside the criminal judgment, reasonably indicates the existence of his criminal conviction.

We thus conclude that § 1229a(c)(3)(B) did not prohibit the Board from considering Shaw's indictment.

B.

In the usual case, rejecting the arguments presented in the petition for review ends the analysis. We note that Shaw raised a new theory for the first time at oral argument: that DHS could not carry its burden to demonstrate his removability because the

13

indictment in the administrative record—and, consequently, the indictment used by the Board to ascertain the object of Shaw's conspiracy—was not the indictment to which he pleaded guilty.

Regardless of what, if any, merit this tardy argument has, we lack jurisdiction to consider it. Under § 1252(d)(1), we may review a "final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." We apply this exhaustion requirement not only to "final order[s] of removal" globally, but also to particular claims specifically. *See Ramirez v. Sessions*, 887 F.3d 693, 700 (4th Cir. 2018) (Gregory, C.J.) ("When an alien has an opportunity to raise a claim in administrative proceedings but does not do so, he fails to exhaust his administrative remedies as to that claim."). Thus, if an alien could have raised an argument before the Board, but didn't, we do not have the authority to consider the argument in the first instance.

Here, we have little difficulty concluding that Shaw failed to exhaust his administrative remedies as to his claim that the record relied on by DHS was incomplete. Shaw's counsel admitted at oral argument that this argument was not presented to the Board. Oral Arg. at 34:15–34:40 (indicating that this issue "was not articulated" before the Board); *see also id.* at 31:45–32:30 (counsel for the Government agreeing). Shaw *never* argued before the IJ, the Board, or on brief to this Court that there was any defect in the conspiracy indictment, but only that *all* indictments were impermissible evidence.

To fail to raise a legal theory before the Board is to abandon that theory. *See, e.g.*, *Tang v. Lynch*, 840 F.3d 176, 183 (4th Cir. 2016) (holding failure to raise claim under

14

Convention Against Torture with the Board prohibited consideration of that claim in a petition for review); *Massis v. Mukasey*, 549 F.3d 631, 638–40 (4th Cir. 2008) (rejecting argument, raised for the first time on appeal, that a state law did not constitute a "crime of violence" under the INA). In his notice of appeal to the Board, Shaw raised only two contentions. First, that the IJ "erred in holding that [he] was inadmissible because of a conspiracy conviction." A.R. 47. And second, that the IJ "erred in *admitting records related to* [*his*] *conviction that were beyond the certified record of conviction*." A.R. 47 (emphasis added). Only one of Shaw's arguments—the second—addressed the evidence of record. And that argument was solely whether or not an IJ can *ever* consider an indictment, any indictment, under the INA and its associated regulations.

Shaw's new argument has no nexus to the arguments he previously made. Contrary to all his previous arguments, he *now* posits that indictments may be proper evidence of a conviction, but maintains that *this indictment* suffers a different, more significant problem: the indictment in the record wasn't the one to which he pleaded guilty. This argument was never raised before the IJ, the Board, or on brief before this Court. No party obtains relief for an argument first raised in oral argument to which neither the other party nor the Court was previously apprised. *See Ramirez*, 887 F.3d at 700 (noting that this Court does not have the authority to consider "bases for relief that were not raised below").

In sum, in earlier proceedings Shaw challenged the admissibility of a particular piece of evidence on statutory grounds, not that there was any insufficiency in the indictment itself. At oral argument, he raised a completely new argument to challenge the

15

overall sufficiency of the evidence. He had not raised that contention anywhere before oral argument. Accordingly, we are without jurisdiction to address it. *See* 8 U.S.C. § 1252(d)(1) (giving the courts of appeals jurisdiction over only those claims the alien has fully exhausted).

IV.

For those reasons, we find no error in the Board's conclusion that Shaw was inadmissible under the Controlled Substance Provision and therefore is subject to removal under 8 U.S.C. § 1227(a)(1)(A). Shaw's petition for review accordingly is

*DENIED.*

16

GREGORY, Chief Judge, dissenting:

The majority endorses the Board's decision to ban a lawful permanent resident from the country based on a conviction that never occurred. Rather than grappling with this fact, the majority misconstrues the exhaustion doctrine to hold that we lack jurisdiction to consider it. Because I believe that we have jurisdiction to consider Shaw's argument regarding the reliability of the government's evidence, and that it has merit, I would grant the petition for review, vacate the order of removal, and remand to the Board for further proceedings.

I.

Andrew Richard Shaw has been a lawful permanent resident in the United States since 1988. In June 2007, he pleaded guilty under New Jersey's generic conspiracy statute to agreeing with another person to commit or aid in "a crime." N.J. Stat. Ann. § 2C:5-2. Seven years later, when Shaw was returning from a trip abroad, the Department of Homeland Security (DHS) deemed him inadmissible based on his 2007 conspiracy conviction. Six months after that, DHS initiated removal proceedings, again based solely on the 2007 conspiracy conviction. DHS charged in relevant part that the conviction qualified as a violation of a law relating to a controlled substance under the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II), and therefore rendered Shaw inadmissible.[1]

---

[1] Because DHS seeks to remove Shaw on inadmissibility grounds, I use the terms "inadmissible" and "removable" interchangeably. *See also ante* note 1.

To substantiate this charge, DHS produced two documents: an indictment and the judgment of conviction. The indictment alleges that Shaw and two other individuals "did conspire with each other to dispense or distribute a controlled dangerous substance, that is, marijuana, in a quantity of twenty-five pounds or more, in violation of N.J.S. 2C:35-5a(1) and 2C:35-5b((10)(a)), contrary to the provisions of N.J.S. 2C:5-2." A.R. 146.[2] The judgment shows that Shaw pleaded guilty to one count of conspiracy in the third degree. Based on these documents, the immigration judge (IJ) found that Shaw had been convicted of conspiracy to distribute twenty-five pounds or more of marijuana, agreed with DHS that Shaw was inadmissible to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(II), and ordered him removed. Shaw appealed to the Board of Immigration Appeals (Board) without success. Like the IJ, the Board determined that Shaw's conviction was for the conspiracy crime charged in the indictment. Shaw now seeks review in this Court.

## II.

Under New Jersey law, the conspiracy-to-distribute-drugs charge listed in the indictment DHS presented cannot be the conspiracy crime listed in the judgment. The record contains no conclusive evidence that Shaw admitted to or was convicted of a

---

[2] The indictment contains two other charges, both of which were dropped: one for possession with intent to distribute twenty-five pounds or more of marijuana, in violation of N.J. Stat. Ann. § 2C:35-5a(1), b(10)(a), and one for the same crime "within 1,000 feet of school property used for school purposes," in violation of N.J. Stat. Ann. § 2C:35-7. A.R. 146.

controlled-substance offense. Thus, DHS has failed to meet its burden of proving that Shaw is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II), and the IJ and the Board erred by relying on the indictment DHS presented.

A.

New Jersey grades conspiracy offenses according to the seriousness of the underlying object of the conspiracy: "[C]onspiracy to commit a crime of the first degree is a crime of the second degree," and in all other cases, "conspiracy is a crime of the same degree as the most serious crime which is the object of the conspiracy." N.J. Stat. Ann. § 2C:5-4. In other words, second-degree conspiracy is conspiracy to commit a crime of either the first or second degree; third-degree conspiracy is conspiracy to commit a crime of the third degree; and fourth-degree conspiracy is conspiracy to commit a crime of the fourth degree. *See id.* Because Shaw was convicted of third-degree conspiracy, we know that he was convicted of conspiring to commit a crime of the third degree. *See id.*

But the conspiracy crime listed in the indictment is not a crime of the third degree. The indictment alleges that Shaw conspired to dispense or distribute twenty-five pounds or more of marijuana in violation of N.J. Stat. Ann. §§ 2C:35-5a(1) and 2C:35-5b(10)(a). Per those statutes, dispensation or distribution of twenty-five pounds or more of marijuana is a crime of the first degree. *Id.* § 2C:35-5a(1), b(10)(a). Thus, the conspiracy crime in the indictment is a crime of the *second* degree. *See id.* § 2C:5-4.

Simply put, Shaw did not admit to and was not convicted of conspiracy to dispense or distribute twenty-five pounds or more of marijuana. He admitted to and was convicted of conspiracy to commit a lesser crime not listed in the indictment.

19

B.

This discrepancy is significant not only because DHS has misrepresented Shaw's conviction but because DHS has the burden of proving that Shaw in fact committed an act that renders him removable under the INA. In removal proceedings against a lawful permanent resident, DHS must "establish[] by clear and convincing evidence" that the lawful permanent resident is removable. *See* 8 U.S.C. § 1229a(c)(3)(A); *Salem v. Holder*, 647 F.3d 111, 114 (4th Cir. 2011). The clear-and-convincing standard is "a heavy burden, requiring 'evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established,' or 'evidence that proves the facts at issue to be highly probable.'" *United States v. Watson*, 793 F.3d 416, 420 (4th Cir. 2015) (quoting *United States v. Heyer*, 740 F.3d 284, 292 (4th Cir. 2014)).

DHS charged that Shaw was removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, DHS had to prove by clear and convincing evidence that Shaw was "convicted of, or [] admit[ted to] having committed, or [] admit[ted to] committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." *See id.*

DHS failed to meet its burden. Given that the indictment DHS presented does not list the crime to which Shaw pleaded guilty, that document offers no evidence of either Shaw's conviction or what Shaw admitted to doing. Without the indictment, the only evidence of Shaw's conviction is the judgment. And the judgment shows only that Shaw

20

was convicted of conspiracy to commit "a crime" of the third degree. *See* N.J. Stat. Ann. §§ 2C:5-2, 4; A.R. 143. This is not enough to give rise to "a firm belief or conviction, without hesitancy," that Shaw was convicted of conspiracy to violate a law relating to a controlled substance. *See Watson*, 793 F.3d at 420; *cf. Valansi v. Ashcroft*, 278 F.3d 203, 217 (3d Cir. 2002) (declining to speculate that noncitizen pleaded guilty to offense that would render her removable because "alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions" (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001))).

The record suggests that DHS had doubts about the sufficiency of its evidence too. During the removal proceedings, DHS requested a continuance and an extension of time—after it had submitted the judgment and indictment described here—so that it could obtain additional records of Shaw's conviction. A.R. 152 ("DHS has requested additional documents from the New Jersey Superior Court, Law Division Hudson County. DHS has not yet received a response to that request. . . . DHS would respectfully request more time to allow the New Jersey state court to respond to the request for additional documents. . . .[] Once DHS receives a response, DHS will be able to fully respond to the respondent's motion to terminate."). Indeed, multiple documents could have revealed the *actual* object crime underlying Shaw's conspiracy conviction—the

21

transcript of the plea colloquy, the plea agreement, a superseding indictment. But DHS never submitted any of these additional documents.[3]

There is a reason that 8 U.S.C. § 1229a(c)(3)(B)—the INA provision listing documents that "shall constitute proof of a criminal conviction"—does not include indictments or other charging documents. An indictment states what the government "set out to prove," not what the government in fact proved or what the defendant admitted. *United States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002). To be sure, the list in § 1229a and the accompanying regulation in 8 C.F.R. § 1003.41 permit the use of "other evidence that reasonably indicates the existence of a criminal conviction." 8 C.F.R. § 1003.41(d). But, unless the defendant was convicted of a crime listed in the indictment, that indictment cannot "reasonably indicate[]" either a conviction or the facts underlying it.

## III.

Contrary to the majority's assertions, Shaw's previous challenge to the reliability of the indictment as evidence of his conviction gives us jurisdiction to consider that

---

[3] Even assuming that the object crime was a lesser (third-degree) controlled-substance offense, and therefore Shaw is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II), he may be eligible for relief from removal—relief that the IJ and the Board determined was not available based on the indictment DHS presented. *See* 8 U.S.C. § 1182(h) (providing for waiver of 8 U.S.C. § 1182(a)(2)(A)(i)(II) "insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana"); *id.* §§ 1101(a)(43), 1229b(a) (providing for cancellation of removal for certain permanent residents convicted of drug crimes so long as crimes do not involve drug trafficking or another aggravated felony).

22

challenge now. The majority correctly notes that our jurisdiction is limited to claims that Shaw, the noncitizen petitioner, raised in his administrative proceedings before the Board. *See ante* 14 (citing 8 U.S.C. § 1252(d)(1) and *Ramirez v. Sessions*, 887 F.3d 693, 700 (4th Cir. 2018)). But this rule "only prohibits the consideration of bases for relief that were not raised below, and of general issues that were not raised below." *Ramirez*, 887 F.3d at 700 (internal quotation marks and citation omitted). We still may consider "more specific and nuanced points," "subsidiary legal arguments, or arguments by extension, that were not made below" but that "demonstrate how and why" the petitioner is entitled to relief on a previously articulated basis. *Id.* (citation omitted).

Here, Shaw has repeatedly pressed the same basis for relief: failure of proof. As the IJ noted, Shaw contended that the judgment reveals only a "conspiracy" conviction and "that the record is unclear as to the nature of the underlying crime to which [he] pleaded guilty." A.R. 52. He also submitted to the Board that DHS "failed to meet its burden of proof . . . because the certified record of conviction [i.e., the judgment[4]], which is the only document that should have been considered by the IJ, is devoid of any reference to [Shaw] being convicted of a drug trafficking offense." A.R. 27. And, he argued, "the records of arrests and charges which were ultimately dismissed do not rise to

---

[4] Although we have used the term "record of conviction" to refer to "the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript," *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 450 (4th Cir. 2005) (citation omitted), Shaw's counsel used the term to refer to the judgment of conviction. *E.g.*, A.R. 19 (arguing that the immigration judge went "beyond the record of conviction in this case by looking at other ancillary documents such as the indictment record"); A.R. 122 (noting that "the record of conviction for [Shaw] simply shows that he was convicted of a conspiracy offense, which is not a drug trafficking offense").

the level of clear, unequivocal and convincing [evidence] that the Government is obligated to meet," A.R. 29. Shaw further questioned "why the Government did not obtain a more acceptable form of document, such as a plea colloquy to present in this case." A.R. 26. Finally, Shaw stated, "the IJ's acceptance of the records that the Government produced is *also* a violation of 8 CFR § 1003.41 in that a record of indictment is not listed as one of the documents that could be presented to prove conviction." A.R. 26 (emphasis added).

The "more specific and nuanced" arguments that Shaw articulated at oral argument are simply additional reasons "why" the indictment is not clear and convincing evidence that he was convicted of a removable offense. *See Ramirez*, 887 F.3d at 700. At oral argument, counsel explained that the indictment did not match the judgment of conviction—that the indictment charged conspiracy to commit a first-degree offense and the judgment reflected that Shaw pleaded guilty to conspiracy to commit a third-degree offense. *See, e.g.*, Oral Arg. at 05:06–34, 09:56–10:33. This explanation is not a new basis for relief. It is an extension of the same "general issue" that Shaw had been raising all along, a failure of proof. *See Ramirez*, 887 F.3d at 700. To use the majority's term, Shaw's previous argument—that the indictment did "not rise to the level of clear, unequivocal and convincing," A.R. 29—has a *clear* "nexus" (*ante* 15) to the more

24

specific argument made at oral argument—that "the indictment does not include" "the factual basis for [his] conviction," Oral Arg. at 05:06–24.[5]

The cases the majority cites to support its conclusion otherwise are distinguishable. In *Tang v. Lynch*, we lacked jurisdiction to consider a Convention Against Torture (CAT) claim because the noncitizen petitioner had never argued to the Board that he was entitled to relief under CAT; he had argued only that he qualified for asylum and withholding of removal. 840 F.3d 176, 180–83 (4th Cir. 2016). In *Massis v. Mukasey*, we lacked jurisdiction to consider a new claim that the noncitizen petitioner's reckless endangerment conviction was not a crime of violence, and thus not a crime subjecting him to removal. 549 F.3d 631, 638 (4th Cir. 2008). The noncitizen petitioner had not raised this argument with either the IJ or the Board; in fact, he had conceded removability and argued only that he was eligible for a waiver of deportation. *Id.* at 633–34. Both the CAT claim in *Tang* and the crime-of-violence challenge in *Massis* were new bases for relief, independent of those the noncitizen had presented to the Board. In contrast, the reliability-of-the-indictment argument that Shaw articulates now rests on the same basis for relief that he has asserted in the past—DHS's failure to provide sufficient evidence of his removability.

---

[5] The majority emphasizes that "Shaw's counsel admitted at oral argument that [the reliability-of-the-indictment] argument was not presented to the Board." *Ante* 14 (citing Oral Arg. at 34:15–34:40). But Shaw's counsel also explained that this argument was an extension of the one Shaw had asserted below: "That [argument] was a nuance that was not articulated earlier; however, [] it is part of the argument that the evidence is not sufficient here." Oral Arg. at 34:27–36.

IV.

The ties that longtime lawful permanent residents, such as Shaw, "develop to the American communities in which they live and work, should not be lightly severed." *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 682–83 (9th Cir. 2005). Indeed, "drastic deprivations [] may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification." *Woodby v. I.N.S.*, 385 U.S. 276, 285 (1966). For this reason, Congress and the Supreme Court have set a high bar for DHS to remove legal residents: "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Id.* at 286; *see* 8 U.S.C. § 1229a(c)(3)(A). DHS has plainly failed to clear that bar here.

Of course, Shaw may have been convicted of conspiracy to commit a lesser (third-degree) controlled-substance offense. But, under the INA and Supreme Court precedent, we cannot simply assume that is the case. 8 U.S.C. § 1229a(c)(3)(A); *Woodby*, 385 U.S. at 286. Such speculation would require us to "draw inferences against" Shaw and "effectively carry the government's burden for it." *See Boggala v. Sessions*, 866 F.3d 563, 573 (4th Cir. 2017) (Diaz, J., dissenting). And this Court is neither equipped nor permitted to do so.

I respectfully dissent.