**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1960

MOHAMED LAMINE KOUYATE,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  September 26, 2024                    Decided:  November 27, 2024

Before WILKINSON, KING, and AGEE, Circuit Judges.

Petition for review denied by published opinion.  Judge King wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

**ARGUED:**  James Doyle Brousseau, BROUSSEAU & LEE, PLLC, Falls Church, Virginia, for Petitioner.  Corey Leigh Farrell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian Boynton, Principal Deputy Assistant Attorney General, Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

KING, Circuit Judge:

Mohamed Lamine Kouyate ("Lamine"), a 36-year-old native and citizen of the Republic of Guinea, petitions for our review of the August 2023 final order of the Board of Immigration Appeals (the "BIA"), dismissing his appeal from the March 2023 adverse decision of an immigration judge ("IJ"). In the two rulings relevant herein, the IJ first denied Lamine's applications for asylum and withholding of removal under the Immigration and Naturalization Act (the "INA") and for withholding of removal under the Convention Against Torture (the "CAT"), all on the ground that he was convicted of a Maryland identity fraud offense that constituted a "particularly serious crime" barring the requested relief (the "particularly serious crime ruling"). The IJ next denied Lamine's application for deferral of removal under the CAT based on his failure to demonstrate that it is more likely than not that he would be tortured if removed to Guinea (the "torture ruling"). In the subsequent administrative appeal, the BIA deemed any challenge to the IJ's particularly serious crime ruling to be waived, but reviewed and affirmed the IJ's torture ruling. As explained below, we ascertain no reversible error and thus deny Lamine's petition for review.

I.

A.

The record reflects that Lamine first entered the United States on a tourist visa in 2014, after his father Lansana Kouyate ("Kouyate") became concerned that the family was not safe in Guinea due to increasing civil and political unrest there. Specifically, Kouyate

2

feared that his political notoriety in Guinea would place his family members at risk of being targeted by his political opponents. Kouyate was the candidate of Guinea's Party of Hope & National Development in the 2010 presidential election — the first democratic election Guinea had conducted in more than 50 years — in which he placed fourth. Prior to that election, Kouyate had held high-level positions in the Guinean government and otherwise — serving as Prime Minister of Guinea in 2007 and 2008, as Executive Secretary of the Economic Community of West African States from 1997 to 2002, and as Guinea's Permanent Representative to the United Nations from 1991 to 1997.

Following his entry into the United States on a tourist visa in 2014, Lamine remained here until he was admitted as an "advance parolee" in January 2016.[1] After his parole status expired in January 2017, however, Lamine simply remained without authorization. Lamine resided in several locations, including Texas, North Carolina, Kentucky, New Jersey, and Maryland.

1.

In July 2020, Lamine pleaded guilty in a Maryland state court to the felony offense of identity fraud having a value of over $100,000, in violation of the Maryland Criminal Code.[2] Pursuant to his guilty plea, Lamine was sentenced to 15 years in prison. Because

---

[1] Immigration authorities at ports of entry into our Country are entitled to parole — that is, temporarily admit — arriving noncitizens into the United States for various limited purposes. *See* 8 U.S.C. § 1182(d)(5)(A); *see also, e.g., Kaplan v. Tod*, 267 U.S. 228, 229 (1925).

[2] Section 8-301(c)(2)(i) of the Maryland Criminal Code prohibits a person from "knowingly and willfully assum[ing] the identity of another, including a fictitious (Continued)

this was the offense underlying the IJ's particularly serious crime ruling, we summarize those state court proceedings.

a.

During the Summer of 2018, a spate of fraudulent vehicle purchases impacted numerous automobile dealerships in Maryland. While investigating those fraudulent activities, a detective in Montgomery County observed Lamine driving a Mercedes Benz sedan with temporary registration tags in Silver Spring. Suspecting that the Mercedes had been fraudulently purchased at a nearby dealership, the authorities obtained the purchase contract, financing application, and other relevant documents from the dealership where the Mercedes had been sold. Those records revealed that a person named Ibrahim Diop had financed a purchase of the Mercedes and drove it away from the dealership a few weeks earlier. Using the social security and driver's license information revealed by the financing documents, the investigators discovered that Diop had died years earlier, in 1979. They also ascertained that the driver's license presented to the dealership — which bore a photograph of Lamine — was false and fictitious, and had never been issued.

On August 18, 2018 — after Montgomery County detectives surveilled Lamine departing from an apartment complex in the suspicious Mercedes — Lamine was pulled

---

person . . . with fraudulent intent to get a benefit, credit, good, service, or other thing of value." The Code establishes potential sentences for identity fraud offenses: Such an offense involving "a value of at least $25,000 but less than $100,000 . . . is subject to imprisonment not exceeding 10 years," while such an offense involving "a value of $100,000 or more . . . is subject to imprisonment not exceeding 20 years." *See* Md. Code, Crim. Law § 8-301(g)(1)(ii)-(iii).

over by the Maryland State Police on an Interstate in Harford County. Although he presented the police officers with an expired Texas license bearing his real name and date of birth, they ascertained that Lamine also possessed a Social Security card issued to the person named Ibrahim Diop, a credit card issued in yet another name, and several receipts bearing additional names. Lamine was then arrested and transported to Montgomery County.

b.

On April 5, 2019, Lamine was charged — by way of a criminal Information filed in Montgomery County — with identity fraud having a value of over $100,000, in violation of Maryland Criminal Code section 8-301(c)(2), plus carrying out a theft scheme having a value of over $100,000, in contravention of Maryland Criminal Code section 7-104. The Information further alleged, inter alia, that Lamine had engaged in multiple fraud schemes over several months to obtain at least 14 vehicles from automobile dealerships in Maryland, using the false identities of various individuals and fictitious persons. On July 22, 2020, Lamine pleaded guilty to the charges in the Information. As a result, he was convicted of the charged offenses, sentenced to 15 years in prison, and ordered to pay more than $700,000 in restitution to automobile dealerships. After serving nearly three-and-a-half years in prison, Lamine was released on parole.

2.

On December 2, 2022, the Department of Homeland Security (the "DHS") served Lamine with a Notice to Appear in Immigration Court, charging him with removability under 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who had remained in the United States

longer than legally permitted.[3]  On January 10, 2023, Lamine appeared before an IJ and conceded removability.  When Lamine declined to designate a specific country of removal, the IJ designated his native Guinea.  On February 3, 2023, Lamine filed his applications for relief under the INA and CAT with the Immigration Court.  In support thereof, Lamine contended that he would be persecuted or tortured if he is removed to Guinea.  According to Lamine, his relationship with his father Kouyate — the former Guinean prime minister and politician — placed him at substantial risk of being tortured by his father's political adversaries if he returned to Guinea.

In March 2023, an IJ conducted a hearing by video conference on Lamine's various applications for relief.  Prior to the hearing, Lamine had submitted 10 exhibits to the IJ, including a Department of State publication called the "Guinea 2021 Human Rights Report."  *See* J.A. 290-326.[4]  The Report outlined Guinea's political and societal upheavals during the past 10 years.  It included a recitation of Guinea's recent social and political turmoil:  In 2020, after Alpha Conde was elected President for a controversial third term, Guinean citizens participated in large-scale demonstrations and violent protests opposing the election.  The opposition to Conde coalesced in September 2021, and Conde was

---

[3] Pursuant to 8 U.S.C. § 1227(a)(1)(B), "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title" is legally removable.

[4] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this matter.

deposed by the Guinean military in a coup d'etat. After Conde's administration was overthrown in late 2021, an army Colonel named Mamady Doumbouya — a Guinean Special Forces commander — assumed the presidency and dissolved Guinea's constitution.

During the hearing, the IJ accepted the 10 exhibits into the hearing record before turning to the testimony of Lamine, his mother, and his uncle — testimony that the IJ found to be credible. Lamine first explained to the IJ that he had been born in Guinea, but had spent very little time there before relocating to the United States, visiting Guinea only once or twice a year for short periods of time. He described attending international boarding schools while his father served as a Guinean diplomat. As an adult, Lamine returned to Guinea for about 10 months in 2013 and assisted his father in various political activities. While in Guinea, Lamine engaged with Guinean political figures and government officials on behalf of his father's political party. Although Lamine did not present evidence regarding other involvement in his father's political activities, he stated that he generally set up phone calls between his father and various Guinean politicians.

As Lamine explained, his father was concerned with the political unrest in Guinea and, near the end of Lamine's 10-month stay, decided that the young man should go to the United States. Lamine described how his father assisted his travel to the nearby country of Cote d'Ivoire (formerly the Ivory Coast), where Lamine obtained a tourist visa and proceeded, accompanied by his father, to the United States in 2014. Lamine thus joined his mother, who was already in the United States after separating from Lamine's father several years earlier. The father soon returned to Guinea and remained politically active

as a leader of Guinea's Party of Hope & National Development. Lamine said that rival forces in Guinea attempted to assassinate his father at least twice.

Each of the witnesses — Lamine, his mother, and his uncle — testified about Guinea's then political climate, highlighting that the Junta running Guinea engaged in political intimidation, suppression of political speech, and human rights abuses. Lamine emphasized that his father had been threatened by corrupt military factions working on behalf of the Guinean government. Lamine said that he would be threatened in Guinea by persons aligned with its former President, Alpha Conde, who was his father's longstanding political rival. Lamine also stated that the Junta would identify him as Kouyate's son and seek to harm him for that reason. Although his father's political party was still active in Guinea, Lamine had not been involved in Guinean politics since 2013, and he had no direct contact with his father after 2018 or 2019. Lamine conceded that he had not experienced violence or threats from his father's political adversaries during his 2013 visit to Guinea, or since being in the United States.

## B.

By his decision of March 17, 2023 (the "IJ Decision"), the IJ first rendered the particularly serious crime ruling, i.e., that Lamine's Maryland identity fraud offense constituted a particularly serious crime that rendered him ineligible for the requested relief of asylum and withholding of removal under the INA, as well as withholding of removal

8

under the CAT.[5]  As the IJ reasoned — because Lamine's offense involved fraud, a loss in excess of $100,000, and a prison term of 15 years — that offense was an aggravated felony and therefore a *per se* particularly serious crime under the INA and the CAT.

The IJ then assessed Lamine's application for deferral of removal under the CAT, for which there is no bar based on his identity fraud offense.  At that point, the IJ rendered the torture ruling, i.e., that Lamine failed to demonstrate that it is more likely than not that he would be tortured if removed to Guinea.  Specifically, the IJ determined that Lamine's fears of torture were based only on generalized concerns of civil strife and violence, and thus those concerns were insufficient to sustain his application for deferral of removal under the CAT.

Although the IJ acknowledged Lamine's assertion that he could be subject to torture on the basis of his father's notoriety, the IJ ruled that there was insufficient evidence that

---

[5] A noncitizen is ineligible for asylum or withholding of removal under the INA if, "having been convicted by a final judgment of a particularly serious crime, he is a danger to the community of the United States."  *See* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i); 8 U.S.C. § 1231(b)(3)(B)(ii).  "Under the [INA], any 'aggravated felony . . . for which the [noncitizen] has been sentenced to an aggregate term of imprisonment of at least five years' constitutes a *per se* particularly serious crime."  *See Annor v. Garland*, 95 F.4th 820, 826 (4th Cir. 2024) (quoting *Hernandez-Nolasco v. Lynch*, 807 F.3d 95, 98 (4th Cir. 2015)).  The INA defines an "aggravated felony" as, inter alia, an offense that "involves fraud and deceit in which the loss to the victim or victims exceeds $10,000."  *See* 8 U.S.C. § 1101(a)(43)(M)(i).

Pursuant to controlling regulations, certain noncitizens are ineligible for withholding of removal under the CAT because of their criminal history.  *See* 8 C.F.R. § 1208.16(d)(2).  For example, a noncitizen "is not eligible for withholding of removal under [the] CAT if he has been convicted of an aggravated felony where the aggregate term of imprisonment is at least five years under 8 C.F.R. § 1208.16(d)(2)-(3)."  *See Wambura v. Barr*, 980 F.3d 365, 370 (4th Cir. 2020).

9

Lamine would still be associated with his father. The IJ also assessed the current country conditions of Guinea and observed that the forces that Lamine alleged would torture him — members of Alpha Conde's administration who opposed the father — had been deposed by the Junta, thereby reducing any risk they might pose to Lamine. And the IJ emphasized that Lamine's torture concerns were speculative, because neither he nor his mother had experienced violence or torture while in Guinea or since arriving in the United States. The IJ thus denied Lamine's application for deferral of removal under the CAT, along with the other requested relief.

C.

Lamine thereafter appealed to the BIA from the adverse IJ Decision. By its final order of August 14, 2023 (the "BIA Decision"), the BIA dismissed Lamine's appeal in its entirety.

First, the BIA determined that Lamine had not properly challenged the IJ's particularly serious crime ruling. As a result, the BIA concluded that Lamine had waived his assertion that he was entitled to asylum or withholding of removal under the INA or the CAT, and did not address its merits.

On the other hand, the BIA affirmed, on the merits, the IJ's torture ruling and denial of Lamine's application for deferral of removal under the CAT. In support thereof, the BIA highlighted the IJ's assessment of Lamine's testimony, including his concession that he had not been harmed or threatened during his 2013 visit to Guinea or during his time in the United States. The BIA emphasized that Lamine's mother had not been recognized or threatened during her recent travels to Guinea. And the BIA agreed with the IJ that

10

Lamine's claims were speculative and predicated only on a generalized fear of violence and criminal acts in Guinea. After reviewing Lamine's evidence, the BIA agreed that the IJ's finding that the father's adversaries were no longer in power — and thus, unlikely to threaten Lamine — was a permissible conclusion. Accordingly, the BIA ruled that the IJ had not erred in finding that Lamine had not proven that it was more likely than not that he would be tortured if removed to Guinea.

## II.

Where, as here, the BIA Decision has adopted or supplemented an IJ's decision, we review both decisions. *See Cabrera v. Garland*, 21 F.4th 878, 883 (4th Cir. 2022). "We review legal questions — such as whether the agency applied the correct legal standard to determine the likelihood of torture — de novo," and we review "factual findings under the substantial evidence standard," treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *See Lopez-Sorto v. Garland*, 103 F.4th 242, 253 (4th Cir. 2024) (citing *Ibarra Chevez v. Garland*, 31 F.4th 279, 288-89 (4th Cir. 2022)); *Portillo Flores v. Garland*, 3 F.4th 615, 625 (4th Cir. 2021). In so doing, "we are bound to uphold the BIA's determinations unless they are manifestly contrary to the law and an abuse of discretion." *See Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011).

11

III.

A.

In these proceedings, Lamine first seeks to challenge the IJ's particularly serious crime ruling and the BIA's conclusion that any such challenge was waived. Lamine specifically wishes to contest the IJ's determination of the amount of loss related to his identity fraud offense, arguing that it was erroneous because it was predicated on the "title of the statute of conviction" and the amount of restitution ordered by the sentencing court. *See* Br. of Pet'r 27. He claims that both amounts — which "cannot be determined with certainty" — represent an intended loss and not an actual loss. *Id.* at 31-33. Before assessing the merits of Lamine's challenge to the IJ's particularly serious crime ruling, however, we must be satisfied that he administratively exhausted that issue before the BIA and properly preserved it for appeal.

As we have recently explained, "[t]he requirement that [a noncitizen] seeking judicial review of a removal order first exhaust administrative remedies, while not jurisdictional, is nonetheless mandatory." *See Lopez-Benitez v. Garland*, 91 F.4th 763, 769 (4th Cir. 2024). And we have recognized that a petitioner fails to exhaust his administrative remedies if he does not properly present his argument to the BIA, and where the BIA has not addressed the argument. *See, e.g.*, *Tepas v. Garland*, 73 F.4th 208, 214 (4th Cir. 2023); *Perez Vasquez v. Garland*, 4 F.4th 213, 228 (4th Cir. 2021). Put succinctly, "[w]e apply this exhaustion requirement not only to 'final order[s] of removal' globally, but also to particular claims specifically." *See Shaw v. Sessions*, 898 F.3d 448, 456 (4th Cir. 2018) (quoting *Ramirez v. Sessions*, 887 F.3d 693, 700 (4th Cir. 2018)). Therefore, "[i]f a

12

petitioner could have raised an argument before the BIA, but didn't, we do not have the authority to consider the argument in the first instance." *See Portillo Flores v. Garland*, 3 F.4th 615, 632 (4th Cir. 2021).

Lamine — who was proceeding *pro se* in the IJ and BIA proceedings — maintains that he preserved his challenge to the IJ's particularly serious crime ruling in his BIA appeal. And we have explained that petitioners "'should not be penalized by evaluating form over substance where their arguments before the Board in essence raised' the claim at issue." *See Tinoco Acevedo v. Garland*, 44 F.4th 241, 247 (4th Cir. 2022) (quoting *Perez Vasquez*, 4 F.4th at 228). But even construed liberally, in that he was proceeding *pro se*, Lamine's submission to the BIA did not suggest that he was challenging the IJ's particularly serious crime ruling or the amount of loss underlying his identity fraud conviction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (instructing courts to liberally construe *pro se* documents).

In disposing of this question, the BIA explicitly recognized the problem of exhaustion and explained that Lamine

> ha[d] not challenged the [IJ's] determination that his conviction for identity fraud . . . is an aggravated felony and therefore a particularly serious crime that renders him statutorily ineligible for asylum, withholding of removal under the INA, and withholding of removal under the CAT. Accordingly, we . . . deem these issues waived.

*See* BIA Decision 2 (citations omitted). The BIA, in these circumstances, did not assess or resolve Lamine's challenge to the IJ's particularly serious crime ruling. And when the agency — such as the BIA — has not addressed the merits of a petitioner's claim, the court of appeals "is not generally empowered to conduct a *de novo* inquiry into the matter being

13

reviewed and to reach its own conclusions based on such an inquiry." *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Hussain v. Gonzales*, 477 F.3d 153, 157 (4th Cir. 2007). This exhaustion rule is particularly applicable where — as here — we would be required to "determin[e] the facts and decid[e] whether the facts as found fall within a statutory term." *See Gonzalez v. Thomas*, 547 U.S. 183, 186 (2006).

Put simply, Lamine failed to administratively exhaust his challenge to the IJ's particularly serious crime ruling. And the BIA did not exercise its authority or apply its expertise to a proper review and disposition of the contention Lamine seeks to pursue here. *See Canales-Rivera v. Barr*, 948 F.3d 649, 662-63 (4th Cir. 2020) (Agee, J., concurring). In these circumstances, we are unable to review and resolve Lamine's challenge.[6]

---

[6] In his Reply Brief and at oral argument, Lamine sought to raise an alternate contention regarding the exhaustion of his challenge to the IJ's particularly serious crime ruling — namely, that the IJ and the BIA were required to provide him with adequate review procedures to exhaust that issue. He "contends that because the agency failed to provide any adequate review procedures for [him] . . . to challenge the amount of loss finding," "the exhaustion doctrine should not even apply here." *See* Reply Br. of Pet'r 4-5. Unfortunately, Lamine waived that argument by failing to raise it in his opening brief. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief."); *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) ("[A]n issue first argued in a reply brief is not properly before a court of appeals.").

In any event, Lamine was not likely to succeed on the merits of his challenge to the IJ's particularly serious crime ruling. There is no dispute that he was convicted of identity fraud, in violation of the Maryland Criminal Code, and that he was sentenced to 15 years in prison for fraudulent conduct. In imposing the 15-year sentence, the sentencing court found that Lamine's fraud involved over $100,000.

14

B.

We turn finally to Lamine's contention that he is nevertheless entitled to deferral of removal under the CAT, with its concurrent challenge to the IJ's torture ruling. Noncitizens who are otherwise ineligible by statute or regulation for asylum or withholding of removal under the INA or the CAT may be eligible for other protection under the CAT, including deferral of removal. A noncitizen seeking deferral of removal — such as Lamine — "asks the government not to rescind his removal but merely to forbear from or delay removing him" to a designated country where he would be tortured. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 249 (4th Cir. 2024).

To be entitled to such CAT protection, the noncitizen must "establish that it is more likely than not that he [will] be tortured if removed to the proposed country of removal." *See* 8 C.F.R. § 208.16(c)(2).[7] That is, it must be shown that "the cumulative probability of torture by all entities, or for all reasons, exceeds 50%." *See Kerr v. Garland*, 66 F.4th 462, 468 (4th Cir. 2023). We have held that "the risks of torture from all sources should be combined when determining whether a CAT applicant is more likely than not to be tortured in a particular country." *See Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 973 (4th Cir. 2019); *see also* 8 C.F.R. § 1208.16(c)(3). But "[t]here is nothing in the regulations, agency guidance, or our precedents that require the IJ to employ any specific methodology when considering and aggregating the likelihood of risk from multiple entities, nor do they

---

[7] For purposes of the CAT, "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." *See Ibarra Chevez v. Garland*, 31 F.4th 279, 287 (4th Cir. 2022).

15

require any specific statistical or quantitative analysis when evaluating the 'more likely than not' standard in the regulations." *See Ibarra Chevez v. Garland*, 31 F.4th 279, 290 (4th Cir. 2022).

In that regard, Lamine contends that he was erroneously denied deferral of removal under the CAT because, if he returns to Guinea, he will be tortured due to his father's "political notoriety and high profile." *See* Br. of Pet'r 41. He contends that the IJ Decision and the BIA Decision both "failed to recognize . . . different facets of" his identity that, when combined, "put him at an especially high risk" of torture. *Id.* Lamine also argues that the IJ and the BIA both erred in finding that the passage of time — that is, the lapse of nearly a decade since his father's presidential campaign and political activism — diminished the risk that Lamine would be recognized as Kouyate's son and that he would be tortured as a result.

Importantly, "our task at this juncture is not to reweigh the evidence and determine which of the competing views is more compelling." *See Mulyani v. Holder*, 771 F.3d 190, 200 (4th Cir. 2014). Instead, it is "to ensure that substantial evidence supports the BIA's judgment . . . and that unrebutted, legally significant evidence [was] not arbitrarily ignored by the fact finder." *See Moreno-Osorio v. Garland*, 2 F.4th 245, 256 (4th Cir. 2021). In conducting our assessment, "[w]e presume that, in reaching these conclusions, the IJ and the BIA reviewed the evidence presented to them and made their decisions based on the relevant evidence." *See Martinez v. Holder*, 740 F.3d 902, 914 (4th Cir. 2014).

Lamine's contention that the IJ's torture ruling "distort[ed] and disregard[ed] important aspects" of his CAT claim is not supported by the record. *See, e.g.*, IJ Decision

16

4 (discussing hearing testimony of Lamine's mother); *id.* at 6 (discussing hearing testimony of Lamine's uncle); *id.* at 13 (explaining that, "[s]ignificantly, the Country Conditions Reports do not sufficiently show that [Lamine's] father's party is either an ally of the current military regime in Guinea, [or] an opposition to that current regime"). The IJ carefully assessed the sources of torture that Lamine claimed to fear as a result of his relationship with his father, "including members of the military junta and . . . his father's political opponents." *Id.* at 15.

The IJ Decision also recognized that Lamine's father was a former Guinean prime minister — as well as a former presidential candidate — and it did not consider his father to be "an average civically engaged Guinean citizen." *See* IJ Decision 12; *see also id.* at 3, 5-7, 13-14 (rejecting Lamine's assertion that persons who targeted his father were working for current government). The IJ also evaluated how the "significant passage of time" had impacted Lamine's torture claim, explaining that it "diminish[ed] the risk that [Lamine] would be recognized or harmed based off of his father's past activism in Guinea." *Id.* at 12.

In its review of the IJ's torture ruling, the BIA Decision emphasized the evidence that the IJ had relied upon, including the fact that — despite his father's notoriety — Lamine "was not harmed or threatened before last leaving Guinea in 2013." *See* BIA Decision 2. The BIA then explained that, "although military forces under the government of Alpha Conde had attempted to kill his father in 2014, the former government has been deposed in a *coup d'etat*, and the country is now governed by a military junta." *Id.* at 1-2. The BIA thus ruled against Lamine, based on the IJ's analysis, explaining that "the military

17

officials that tried to kill his father worked for the Alpha Conde government and are thus no longer in power is a permissible view of the evidence and therefore not clearly erroneous." *Id.* at 3.

The IJ Decision and the BIA Decision also emphasized the lack of evidence supporting Lamine's assertion that he would face a particularized risk of torture because of his father's political activism more than a decade ago. *See* IJ Decision 13-14; BIA Decision 3. And the IJ and the BIA each determined that Lamine's fears of torture were predicated primarily on generalized violence and civil strife, and as such were insufficient to establish eligibility for deferral of removal under the CAT. *See, e.g.*, *Herrera-Martinez v. Garland*, 22 F.4th 173, 187 (4th Cir. 2022) (recognizing that generalized reports of violence are insufficient to show that government would torture petitioner); *Nolasco v. Garland*, 7 F.4th 180, 191 (4th Cir. 2021) (explaining that "the mere existence of a pattern of human rights violations in a particular country does not constitute a sufficient ground" to sustain a CAT claim).

In these circumstances, it is apparent that the IJ and the BIA carefully assessed the record, and they each then rejected Lamine's application for deferral of removal under the CAT. We are thus constrained to affirm the torture ruling.

IV.

Pursuant to the foregoing, we hereby deny Lamine's petition for review.

*PETITION FOR REVIEW DENIED*

18